OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1905.

*(Continued from Volume 189.)*

## SMITH v. FORDYCE et al., Receivers, Appellants.

Division Two, June 20, 1905.

1. **PLEADING: Failure of Proof: Variance.** A failure of proof occurs when the petition or answer is unproven in its entire scope and meaning, and a variance has reference to discrepancies between the issues made by the pleadings and the evidence in support of them.

2. **——: Negligence: Failure of Proof: Variance: Loose Car.** Where when the whole petition is read it is obvious that plaintiff did not seek to recover merely because a loose car left standing on a spur track started and ran down an incline grade to the train in which he was rightfully working, but that the allegations really mean that a car was left standing on the spur, with a brake not only loose but so covered with logs that whoever attempted to set it could not do so or otherwise so control the car as to prevent it from running down on the track where he was at work, and that there was no derailing switch at the point of juncture or other obstruction to prevent its rolling onto the main track, a failure of proof of that cause of ac-

tion does not result when it is shown that the car was started by employees of a mine where the car was left loose upon the spur, for the starting of the car was not the sole cause of the injury.

3. ———: **Coexisting Causes.** If the cause of the injury is defendant's negligence concurring with some other force for which he is not responsible, he is liable if his negligence is one of the proximate causes.

4. ———: ———: **Malicious Interference.** A spur switch was used principally to accommodate a mine; cars were set on it loaded with supplies for the mine, and with the knowledge and acquiescence of defendant the mining company's employees were in the habit of moving cars backwards and forwards to the place of unloading. *Held,* that attempts by the miners to move the car, which ran down onto the main track and struck the car on which plaintiff was working, was not a malicious interference with the car, but something likely to occur and to have been expected, and its running down on to the main tract was a circumstance to have been guarded against by defendant, either by having the brakes set or at least in such a condition that they might have been set by the mining crew, or by the construction of a derailing track. And a recovery from defendant will be allowed, not for failure to set the brakes alone, or for failure to supply the derailer alone, but for the concurrence of both acts of negligence.

5. ———: **Master and Servant: Appliances.** It is the duty of the master to use reasonable care and precaution in procuring and keeping his appliances in good condition and order, and he cannot remain wholly indifferent to improvements in appliances; it is proper for the jury, in determining whether the master's precaution was reasonable, to know what appliances are in common use to prevent the kind of accident complained of.

6. ———: ———: **Derailing Track.** Whether or not a spur track with a down grade towards the main track, and upon which defendant placed a car to be unloaded, was an unsafe appliance, without a derailing switch to prevent the loose car placed on the spur track from rolling down upon a train on the main track, was, in this case, a question for the jury.

7. ———: ———: **Assumption of Risk: Loose Car.** The servant who is repairing a car on the track does not assume the risk of being injured by a loose car on a spur track, with its brakes unset and with no derail track to prevent its rolling down on the car where he was at work.

8. ———: **Damages: General Instruction.** The court told the jury that "if they find for plaintiff they may allow him such damages, not exceeding ten thousand dollars, as they may believe he has

sustained by reason of the injuries, if any, to his left arm caused by the collision described in the evidence." *Held*, that, if defendants were dissatisfied with the general character of this instruction they should have asked one which pointed out the proper elements of damages, and having failed to do so, and there being nothing in the amount of the verdict to indicate that the jury were actuated by improper motives, the general character of the instruction is no ground for reversal.

9. ———: ———: **Excessive Verdict.** Plaintiff, a strong, active man, 26 years old, holding a lucrative position, has, as a result of defendants' negligence, permanently lost the use of his left arm, and is necessarily debarred from following his profession as a car-repairer. *Held*, that a verdict of $7,500 is not excessive.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

Affirmed.

*S. W. Moore, Cyrus Krane* and *J. W. McAntire* for appellant.

(1) The court erred in overruling defendants' demurrer to the evidence. The case alleged was not proved. Waldheir v. Ry., 71 Mo. 514; Price v. Railroad, 72 Mo. 416; Ely v. Railroad, 77 Mo. 34; Harty v. Railroad, 95 Mo. 365; Buffington v. Railroad, 64 Mo. 246; Yarnell v. Railroad, 113 Mo. 570; Weil v. Posten, 77 Mo. 287; Jackson v. Hardin, 83 Mo. 187; Current v. Railroad, 86 Mo. 66; Nall v. Railroad, 97 Mo. 75; Crawford v. Aultman, 139 Mo. 271; Raming v. Railroad, 157 Mo. 507; Hite v. Railroad, 130 Mo. 136; McManamee v. Railroad, 135 Mo. 440; Houston v. Tyler, 140 Mo. 263; McCarty v. Hotel Co., 144 Mo. 402; Bartley v. Railroad, 148 Mo. 139; Feary v. Railroad, 162 Mo. 75. 2. The absence of a derailer was not the cause of the injury. Fredericks v. Railroad, 157 Pa. 103; Harlan v. Railroad, 65 Mo. 25; Stepp v. Railroad, 85 Mo. 233; Stanley v. Railroad, 114 Mo. 624. 3. The absence of the derailer under the pleadings and evidence in this case furnished no ground of recovery.

(a) The petition did not authorize it. Hogan v. Railroad, 150 Mo. 49. (b) The master is not compelled to furnish any particular kind of appliances. 1 Labatt on Master and Servant, p. 84, sec. 35; Devitt v. Railroad, 50 Mo. 305; Tabler v. Railroad, 93 Mo. 85; Muirhead v. Railroad, 103 Mo. 251; Bohn v. Railroad, 106 Mo. 433; O'Hare v. Railroad, 95 Mo. 678; Friel v. Railroad, 115 Mo. 507; Bender v. Railroad, 137 Mo. 250; Glover v. Meinrath, 193 Mo. 304. (c) Because a derailer might have made the track safer was not proof that the appliances furnished thereon were not reasonably safe. Smith v. Railroad, 69 Mo. 39; Muirhead v. Railroad, 19 Mo. App. 644; Winkler v. Basket & Box Co., 137 Mo. 400; Berning v. Medart, 56 Mo. App. 449. 4. Plaintiff assumed the risks and the court should have so held as a matter of law. 1 Labatt on Master and Servant, p. 94; Smith v. Railroad, 69 Mo. 38; Jackson v. Railroad, 104 Mo. 458; Alcorn v. Railroad, 108 Mo. 97; Bradley v. Railroad, 138 Mo. 303; Glover v. Meinrath, 133 Mo. 305; Bender v. Railroad, 137 Mo. 250; Bohn v. Railroad, 106 Mo. 434; Williams v. Railroad, 119 Mo. 324; Epperson v. Postal Tel. Co., 155 Mo. 346; Minnier v. Railroad, 167 Mo. 113. 5. The injury was attributable solely to the acts of third parties, and under the conceded facts defendants were not liable. Flint v. Railroad, 91 Am. & Eng. R. R. Cases 249; Fredericks v. Railroad, 157 Pa. 123, 22 L. R. A. 306; Marrs v. D. & H. Canal Co., 54 Hun 625. (2) At the close of all the evidence the court erred in not peremptorily instructing the jury to return a verdict for defendants, because defendants could not have reasonably apprehended the occurrence. Beasley v. Transfer Co., 148 Mo. 419; O'Malley v. Railroad, 113 Mo. 329; Brewing Association v. Talbot, 141 Mo. 683; Fuchs v. City, 167 Mo. 652; Chandler v. Gas Co., 174 Mo. 328; Holt v. Railroad, 84 Mo. App. 447. (3) Plaintiff's instruction 1 is erroneous. Chitty v. Railroad, 148 Mo. 73; Kenney v. Railroad, 70 Mo. 255; Melvin v. Railroad, 80

Mo. 106; Wolfe v. Lodge, 106 Mo. 686; Jacquin v. Railroad, 57 Mo. App. 355; McMahan v. Express Co., 132 Mo. 649. (4) Plaintiff's fifth instruction on the measure of damages was wrong, and the court erred in giving it, for the reason that it did not state the elements of damage. Hawes v. Stock Yards Co., 103 Mo. 66; McGowan v. Steel Co., 109 Mo. 531; Brannock v. Elmore, 114 Mo. 65; Badgley v. St. Louis, 149 Mo. 144.

*Howard Gray* and *Cole & Burnett* for respondent.

(1) The court did not err in overruling defendants' demurrer to the evidence. Jones v. Railroad, 178 Mo. 528. The case alleged was proven. In any event, the most that can be claimed is a mere variance and not a total failure of evidence to support the case. In such case, the defendants waived the same by not complying with the statute. R. S. 1899, sec. 655; Real Estate Co. v. Realty Co., 159 Mo. 562; Brigges v. Munchon, 56 Mo. 467; Ely v. Porter, 58 Mo. 158; Turner v. Railroad, 51 Mo. 501; Meyer v. Chambers, 68 Mo. 626. If a party fails to avail himself of said section in the trial court, it is too late to complain in the appellate court. Real Estate Co. v. Realty Co., supra; Fischer v. Max, 49 Mo. 404; Brown v. Railroad, 50 Mo. 461; Bank v. Leyser, 116 Mo. 51; Ridenhour v. Railroad, 102 Mo. 270. A failure of proof applies to a case where the allegations of the petition or answer are unproven in their entire scope or meaning, and variance, as provided in said section 655, has reference to discrepancies between the issues as made by the pleadings and the evidence in support of them. Rumbolz v. Bennett, 86 Mo. App. 174. (2) Appellants say "absence of a derailer was not the cause of the injury." To this respondent replied, Had a derailing switch been at the junction of the switch with the main line, the accident would not have happened. Bassett v. St. Joseph, 53 Mo. 290; Lore v. Mfg. Co., 160 Mo. 608; Straub v. St.

Smith v. Fordyce.

Louis, 175 Mo. 413; Benjamin v. Railroad, 133 Mo. 274; Brash v. St. Louis, 161 Mo. 433. The court did not authorize a recovery unless the jury found from all the surrounding circumstances that a derailing switch should have been used by defendants at this point. The evidence, therefore, showing that men unskilled in the handling of cars were in the habit of pushing these cars from place to place on this switch, was admissible for the purpose of showing the necessity of the defendants using some care to prevent a car escaping onto the main track in case it escaped from such persons. It was gross negligence for the defendants to leave this car standing on this grade with the brake so it could not be used and nothing to prevent it from rolling down the switch if these men attempted to move it, or in case any other person kicked the block of wood from under it. Jones v. Railroad, 178 Mo. 528. (3) It is true the master is not compelled to furnish any particular kind of appliances, and there is nothing in the record in this case which shows that the trial court so held. The question of defendants' negligence in not furnishing the derailer or some other kind of device to prevent accidents of this kind was properly submitted to the jury as to whether it constituted negligence or not. (4) Third parties were in no wise responsible for the failure of defendants to maintain the derailing switch or other means to prevent cars from escaping onto the main track. Waller v. Railroad, 59 Mo. App. 410. (5) Appellants cannot complain of the action of the court in giving the instruction for plaintiff in relation to damages, as they asked no instructions on this question, and an instruction in behalf of plaintiff was good as far as it went. Browning v. Railroad, 124 Mo. 55; Wheeler v. Bowles, 163 Mo. 398; Longan v. Weltmer, 79 S. W. 655; Matthews v. Railroad, 142 Mo. 645; Minter v. Bradstreet Co., 174 Mo. 444; Harmon v. Donohoe, 153 Mo. 263; Robertson v. Railroad, 152 Mo. 382;

Geismann v. Electric Co., 173 Mo. 654; Barth v. Railroad, 142 Mo. 535.

GANTT, J.—This is an action commenced in the circuit court of Jasper county, Missouri, against the defendants as receivers for the Kansas City, Pittsburg & Gulf Railroad Company, to recover damages for injuries received by the plaintiff while in their employ as a car repairer.

The petition alleges the incorporation of the defendants as a railroad company, the appointment of the defendants Fordyce and Withers as receivers by the circuit court of the United States for the western district of Missouri, their qualification as such and their possession of the said railroad, its engines and cars at the times mentioned in the petition; that while said receivers were operating said railroad, plaintiff was in their employment as a car repairer, and as such it was his duty to go about the freight and passenger cars of the defendants and repair the same along the line of said railroad; that Joplin was and is a station on the line of said railroad, and near said city and station there was a switch leading from the main line of said road to a lead and zinc mine known as the Bankers Mine; that the said receivers were using said switch under the order of said court to haul cars of coal and other property out to said mine, and for other purposes; that from the place where said cars were left at said mine to be unloaded, to the main line of the road, was down grade so that cars left standing on said switch at said mine, unless fastened in some way, would run down to the main line track and other switches with great force and speed, thereby placing plaintiff while employed in his work of repairing cars on said track in great danger, and placing all other employees of the defendants and passengers on said road in great danger from said cars starting from said point on said switch and running down and out upon the main line and switches with said great force and speed; that it was the duty of said re-

ceivers to have placed at or near the intersection of said switch with the main line, what is commonly known as a derailing switch or some other means of obstruction so that if cars did escape at said switch at said mine and roll down to the main line, they would not run out on the main line, but would be stopped or derailed; that the defendants negligently failed to take any precaution to prevent said cars from starting when left at said mine and running down said grade and out on to the main line and the other switches and spurs of said railroad at said point so operated by the said receivers. Plaintiff states that on the ——— day of October, 1899, one of the freight cars operated by the defendants as receivers had become out of repair, and the same was attached with their train on the track so operated by said receivers at or near said station on said railroad, and it was the duty of plaintiff to go to said car and under the same for the purpose of repairing it so that it could be used by defendants in the transportation of freight over said road; that in pursuance of his duty he went upon said track and under said car for the purpose of repairing the same; that while he was at work performing his duty as repairer as aforesaid, a car that had been placed at said mine by said receivers and negligently left in a position so that it was allowed to run down said switch, and in such condition that it could not be managed or controlled, started and rolled down said switch, increasing its speed as it went, until it reached the main line of said road under great speed, and on account of the negligence of the defendants in failing to have a derailing switch as aforesaid, or using other means at the point mentioned to prevent said car from rolling on said track with great speed, and on account of the negligence of defendants in leaving said car in said situation and condition, it ran with great force into the train to which the car which plaintiff was repairing was attached and caused the car that plaintiff

was repairing to run over plaintiff, thereby breaking and mangling his left arm so that about four inches of bone next to the shoulder had to be removed, and leaving the plaintiff permanently injured for life; that plaintiff suffered great pain in body and mind from said wound and bruise, and has ever since been unable to perform labor, and will always be permanently injured; that the defendant, the Kansas City Southern Railway Company, has become the purchaser under the order of said court of all the property of said Kansas City, Pittsburg & Gulf Railroad Company, and as a part of said purchase price, the said defendants assumed the obligations of said receivers to this plaintiff. Wherefore, he prays judgment for ten thousand dollars and costs.

The answer was, first, a general denial; second, an assumption of the risks by said plaintiff of said injuries; third, that the said car which collided with the train under which plaintiff was working was set in motion by the acts of third parties over whom defendants had no control, without the knowledge or consent of defendants or either of them.

Plaintiff's reply denied all the new matter set up in the answer.

The cause went to trial and a verdict was rendered on the twenty-third of January, 1902, in favor of plaintiff for seven thousand five hundred dollars. At the same term of court motions for new trial and in arrest of judgment were filed, heard and overruled, and defendants duly excepted, and took their appeal to this court.

The evidence developed that the plaintiff was a young man twenty-six years of age at the time he was injured, and as a result of his injuries he had about an inch and a half of the bone taken from his arm between his shoulder and elbow, and that on account thereof he has no use of his arm below the elbow, and it hangs at his side perfectly useless to him; that prior to his in-

jury plaintiff was a car repairer and inspector in the employ of the defendant receivers, and had been so employed about two months, and had had altogether about nine years' experience. At Joplin where the accident occurred, the yards are very near the station and a mile and a quarter south of the depot there was a switch track leading east from the main line to and furnishing switching accommodation to the Bankers Mine, at that time operated by the Missouri Lead & Zinc Company. This switch or spur track had no outlet to the east; near the middle of it, it was on a level space called "the hump," and from this level space the grade declined both to the east and to the west. The injury to plaintiff occurred on the twenty-third of October, 1899. On the previous Saturday the defendants' employees had placed on this spur track a car load of timbers which had been shipped to the mining company. These timbers were loaded on a car with sideboards, and on account of the width of the car and its load, it could not be pushed in on the spur track more than six hundred feet from the main line, because of the powerhouse or shed built so near to the track that this car thus loaded could not pass. There was evidence on the part of the defendants that when they set this car out and left it, the brakesman set the brake on it and put a stick of wood under the wheel at the west end. The car remained in this position until the following Monday. On the part of the plaintiff there was evidence to show that the timbers with which the car was loaded were piled up about and over the brake so that the servants of the mining company, when they went to move this car, could not work the brake or twist it at all because the logs were on it, and that it was not set. It seems that on Monday the mine superintendent, wishing to get the car past the coal bin and further east, telephoned the railroad company to send a switch engine to move the car, but there was delay in sending the switching crew, and so the superintendent of the mining company sent

his own employees to move the car west, though one of the witnesses said they intended to move it east, so that the track could be moved and adjusted further from the obstructing building. Some four or five of these mine employees armed with crow bars and pinch bars went to this car to move it; one of them kicked the stick of wood from under the wheel, and the car started slowly down the switch towards the main line. One of the employees then got on the car and attempted to use the brake, but found the brake was covered with the timbers so that it could not be used. They then attempted to stop the car by throwing sticks of wood in front of the wheels, but this proved unavailing and the car continued to run down the switch, increasing its speed as it went, and passed on to the main line, and then on to a switch where a freight train was standing, one of the cars of which the plaintiff was at that time repairing, and struck this train, and caused one of the cars to run over the plaintiff, inflicting the injuries for which he brings this action. There was evidence offered by the plaintiff tending to show that the defendant company had in use along this road and at points of this character, a device known among railroad men as a derailing switch, which is adapted to the purpose of preventing cars, when escaping from one of these switches, from coming out on the main line or track, and evidence showing that no such device or derailing switch had been provided for this switch and no other device to prevent cars escaping on this switch from coming on to the main line. There was also evidence tending to show that the employees of this mine had been in the habit of moving cars on this switch backwards and forwards, and that the company knew they were in the habit of so doing, as cars left at one place would be found two hundred yards distant when the company wanted to get them again.

At the close of the evidence the court gave the following instructions for the plaintiff:

"1. The court instructs the jury that it was the duty of the defendants to furnish the plaintiff a reasonably safe place in which to perform his work, regard being had to the nature and character of his employment and the kind of work he was engaged in, and it was also the duty of the defendant to keep its tracks, switches and cars in a reasonably safe condition so that plaintiff could perform his labor about them in reasonable safety, regard being had, as above stated, to the nature of his employment. And if the jury believe from the evidence that on the twenty-third day of October, 1899, and for some time prior thereto, the defendants had a switch leading from the main line of their road near the station at Joplin, out to a place known as the Bankers Mine, and that cars left standing on said switch by the defendants, their agents or employees, were liable to escape from the persons moving the same, with the knowledge and consent of the defendants, and run down said switch and out on the main line of said road and other switches, at said station, then it was the duty of the defendants to have taken ordinary care and precaution to have so fixed its switch and cars on the same, if the same could be done by exercising reasonable care, so that if a car did escape on said switch at said mine, or get away from those in charge of it, it could not roll down said switch and out on to the main line and other switches of the defendant, if the jury believes by so doing it would probably endanger persons rightfully on said track or switches, and if the jury believe from the evidence in this case that the plaintiff under the direction of the conductor in charge of a freight train belonging to the defendants, and standing on a switch at the station at Joplin, went under said train for the purpose of repairing a car therein, and that in so doing he was exercising ordinary care and caution, and that prior thereto the defendants, while operating said railroad through their servants or employees, had left a car standing on said switch, at

said mine, and that said car was left there without the brake being set, or so loaded that the brake could not be set or used in moving said cars, and that the defendants knew that the employees at said mine were liable to attempt to move said car, and that the defendants carelessly and negligently left said car standing in such condition and at such a point on said switch that if it started or was started by the employees at said mine, that it could not be controlled and that the defendants carelessly failed to put in a derailing switch or use any other means to prevent cars while so being moved from rolling out on said main line, in case they escaped and that while plaintiff was at work a car, which had been standing at said mine, and which had been left standing as aforesaid, and without the brake being in such a condition that it could be used, got away from the persons moving it and started and run down said switch and out on to the main line and then on to the switch where plaintiff was working and collided with the car he was working on, and thereby caused said car to run over the arm of the plaintiff and injure him, and that said injury was caused by the carelessness and negligence of the defendant in leaving said car standing on said track in such a condition, and by their carelessness and negligence in failing to put in a derailing switch or using other means to prevent cars from rolling down said switch, then the finding should be in favor of said plaintiff.

"2. The court instructs the jury that ordinary care is such care as a person of ordinary prudence and caution would usually exercise under the same situation and under the same circumstances.

"3. In determining whether plaintiff exercised reasonable care in going under the car on the switch to repair the same under the circumstances shown by the evidence, you are instructed that he was only required to exercise such care as a careful and prudent car repairer would have exercised under like circumstances.

"5.   The court instructs the jury that if they find a verdict for the plaintiff they may allow him such sum for his damages, not exceeding ten thousand dollars, as they believe he has sustained by reason of the injuries, if any, to his left arm caused by the collision described in the evidence."

The court gave the following instructions for the defendants:

"1.   If plaintiff's injuries were the result of a mere accident then plaintiff cannot recover.   The court instructs the jury that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and if they believe from the evidence that any witness has wilfully sworn falsely to any material fact, then they are at liberty to disregard the whole or any part of the testimony of such witness.

"2.   You are instructed that merely because plaintiff was injured while in the employ of the defendant does not of itself entitle him to recover in this action, but before under any circumstances plaintiff can recover he must prove also by the greater weight of the credible testimony that his injuries were caused by the negligence of the defendant of the character pleaded in the petition and submitted to your consideration.   If there was no such negligence, then your verdict must be for the defendant."

The refused instructions will be noted in connection with the assignments of error.

At the close of all the evidence the defendants interposed a demurrer to the evidence which was overruled by the court.

I.   The stress of the argument for a reversal of the judgment in this case, is that the demurrer to the evidence should have been sustained because there was a total failure of proof of the cause of action alleged, and not a mere variance which was not a surprise to defendant.

The petition by way of inducement avers the own-

ership by defendants of a switch track leading from its main line near Joplin to a lead and zinc mine known as the "Bankers Mine," which they used to haul cars of coal and other supplies to said mine, and that from the place where said cars were left at said mine to be unloaded said switch track was down grade to the main line, so that cars left standing on said switch track at said mine, unless fastened in some way, would run down to and on the main line track and other switches with great force and speed, thereby endangering the lives of the employees of defendants engaged in work on said main line and passengers on said railroads; that it was the duty of said receivers to place said cars at said mine on said switch so that the same would not become loose and roll down to the main line and to have placed at or near the intersection of said switch with the main line, what is commonly known as a derailing switch or some other means of obstruction so that if the cars did escape from said switch at said mine and roll down to the main line, they would not run out to the main line, but would be stopped or derailed. Having then alleged that plaintiff on the ——— day of October, 1899, in pursuance of his duty as car repairer for defendants, went under a car of defendants' attached to one of its trains on its track near Joplin, to repair the same, it is averred that while so engaged, "a car that had been placed at said mine by said receivers and negligently left in a position so that it was likely to run down said switch and *in such condition that it could not be managed or controlled,* started and rolled down said switch, increasing its speed as it went, until it reached the said main line of said road under great speed; that on account of the negligence of the said defendants in failing to place a derailing switch or using other means at the point mentioned, to prevent said car from rolling on said track with great speed, and on account of the negligence of defendant in leaving said car in said situation and condition, said car ran with great speed and force into

the freight train to which that car that the plaintiff was repairing was attached, and caused the same to run over plaintiff, thereby breaking his arm.'' The contention is that by the foregoing allegation the plaintiff charged an injury due alone to the fact that the car on the mine switch, *without human agency,* got loose and rolled of its own accord down the switch track, and onto the main track, and thence to a collision with the car which plaintiff was repairing, and that the *evidence* discloses an entirely different state of the facts; that plaintiff in his evidence in chief merely testified as to what he was doing at the time the accident happened, and to the extent of his injuries, and knew nothing of the starting of the car or the cause thereof, and that the testimony of Mr. Eagan for the plaintiff refuted the allegation of the petition because he testified that the employees of the mining company went to this car with the purpose of moving it so they could fix the track and thereby let it go past the power house; that he found the car blocked at the west end; that he moved this block and that on this account and by the efforts of the men assisting him, the car was set in motion, and after it started these employees of the mining company were unable to stop it either with the brake on the car or with the timbers which they threw in front of it to check its progress; that thus the plaintiff's own evidence proves an entirely different cause of action than that alleged by him, and that the car was left by the defendants in a safe and secure position, and was set in motion by the act of third parties without the knowledge or consent of defendants, just as they alleged in their answer. In support of this position defendants cite us to numerous cases decided by this court, that it is fundamental that plaintiff can only recover on the cause of action stated in the petition, and insists that the facts in evidence in this case show that the cause of action stated in plaintiff's petition was unproved in its entire scope and meaning. The rule invoked by defendants is unques-

tionably the law of this State as attested by the authorities cited. [Waldhier v. Railroad, 71 Mo. 514; Weil v. Posten, 77 Mo. 284; Raming v. Railroad, 157 Mo. 477; Feary v. Railroad, 162 Mo. 75.] The question arises, then, have the defendants properly construed the petition in the case and ought the court to have sustained the demurrer to the evidence on this ground? It is evident that the circuit court took a different view of the scope of the petition. By its first instruction for the plaintiff, it instructed the jury that it was the duty of the defendants to furnish the plaintiff a reasonably safe place in which to perform his work, regard being had to the nature and character of his employment; and to keep its tracks, switches and cars in a reasonably safe condition so that he could perform his labor about them in reasonable safety, and if the defendants left the car standing on the said switches at said mine without the brake being set or loaded so that the brake could not be set or used in moving the car and that the defendant knew that the employees of the said mine were likely to move this car, and left it in such condition that if they did move it, it could not be controlled by them, and in addition carelessly failed to put in a derailing switch, or use any other means to prevent cars while so being moved from rolling out on said main line, in case they escaped, and that by reason of such negligence said car did roll out on said main line, and struck the train under which plaintiff was working, and thereby injured him, then he could recover. On this point, to-wit, the total failure of proof to sustain the allegations of the petition, defendants rest their contention on the fact that the car did not move of its own volition, but remained stationary until the mining crew moved the block from under the wheel, and insists that it was wholly incompetent to show under the petition that the car was started down the switch track by the endeavor of the mining crew to move it back a short distance to

the west, whereas the essential averments as to negligence were three fold, to-wit, that the car was "left in a position so it was likely to run down said switch, to-wit, left standing on the brink of a down grade in the direction of the main line," and second, "in such a condition that it could not be managed or controlled, to-wit, left with the brake loose and so covered by the ends of the heavy timbers that those moving it could not get to the brake to set it so as to check or retard the movement of the car when started," and, third, the failure to have "a derailing switch or other means to prevent the car from going out upon the main track" when once started down grade by whatever means it was started.

The court admitted testimony to show that the mining crew was endeavoring to move the car back a little to the west in order that that track might be moved farther away from the power house, and thereby permit the car to be moved on east to the mine, and in this connection offered evidence that it was the custom and habit of the defendants to place loaded cars for the use of the mine, on this switch or spur track, and to permit the mining crew to move said cars backwards and forwards thereon for their convenience in unloading the same. That the car was attempted to be so moved did not and could not have misled or surprised the defendants at the trial, because the defendants alleged in their answer that it was set in motion by the acts of third parties, over whom they had no control, without their knowledge or consent. The testimony admitted by the court as to the attempt of the mining crew to move the car was introduced preliminary to the evidence tending to show the three acts of negligence above set out upon which plaintiff based his right of recovery. That there was no failure of proof to show that the car was located at the brink of the down-grade leading west towards the main track without the brake having been set, and with the brake so covered up with

the logs with which the car was loaded, is too plain for discussion; neither was there any failure to show that there was no derailing switch provided at the junction of this switch with the main track, or any other means to prevent wild cars from running from the switch on to the main track. The evidence of the plaintiff tending to show that the car was set in motion by the mining crew, moreover, was to contradict the allegation in the answer that it was set in motion by third parties over whom defendants had no control, and without the knowledge and consent of defendants. Looking at the case as it was developed on the trial it might probably have been better for the plaintiff to have alleged the fact that the car was moved by the mining crew for the purpose above indicated and with the consent and knowledge of the defendants, but the question we are now dealing with is whether there is a total failure of proof and not a mere variance of which the defendants took no advantage by filing an affidavit of surprise. We think there was no such complete failure of proof as defendants insist upon. A failure of proof within the meaning of our decisions occurs when the petition or answer is unproven in their entire scope or meaning, and a variance, as provided by section 655, Revised Statutes 1899, has reference to discrepancies between the issues made by the pleadings and the evidence in support of them. It is obvious, we think, when the whole petition is read, that the plaintiff did not seek to recover merely because a loose car started and ran down the track, but the burden of this case is that this car was left standing on the brow of this down-grade in the direction of the main line, with a brake not only loose but so covered with the logs that whoever should attempt to set it in motion could not control it or manage it so as to prevent it from running down on to the main track in the absence of a derailing switch at the point of junction. It may be conceded that the car would not have moved of its own gravity so long as the

block remained under the west wheel, but the taking out
of that block and the starting of the car was only one
fact in the history of the case, and the contention of the
plaintiff was, and so the jury were instructed, "that
the defendant left this car standing on said switch
where it was likely to escape from the persons moving
the same, with the knowledge and consent of the de-
fendants, with the brake loose and so covered up with
the ends of the logs that they could not control or man-
age the same." It is evident that the mere starting of
the car was not the sole cause of plaintiff's injuries,
but the negligent placing of the car with such insecure
brakes that it could not be controlled or managed when
started, coupled with the want of a derailing switch
which produced the injury. While it may be said that
if the car had not been started the injury would not
have occurred to plaintiff, it can as truly be said that
if the brake thereon had been set, or even if it had not
been covered by the ends of the logs so that it could not
be set, still the accident would not have occurred be-
cause the car could have been controlled and managed
by the mining crew, or on the other hand, if they had
failed to stop it with the brake, if there had been a de-
railing switch or other device to prevent it running out
upon the main track, still plaintiff would not have been
injured. In a word, it was a question under the petition
and the evidence and it was so submitted to the jury
whether the injury would not and could not have hap-
pened but for the negligent condition in which the car
was left at the place mentioned in the petition together
with the want of a derailing switch, and hence it is ap-
parent that it was not the mere starting of the car
which was the sole cause of the injury to plaintiff nor
was that relied upon as the sole basis of recovery, but
it was the other negligent acts, in connection with the
starting, which contributed to the plaintiff's injury,
and his undoing would not have occurred except for the
presence and coexistence of these contributing causes.

[Lore v. American Mfg. Co., 160 Mo. l. c. 625, 627; Bassett v. St. Joseph, 53 Mo. 290.]

It is a settled principle of law in this State that if damage or injury "is caused by the concurring force of a defendant's negligence and some other force for which he is not responsible, including 'the act of God,' or superhuman force intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage. It is also agreed that if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage, that it is reasonably certain that the other cause *alone* would not have sufficed to prove it, the defendant is liable, notwithstanding he may not have anticipated the interference of the other or superior force, which concurring with his own negligence produced the damage." [Brash v. St. Louis, 161 Mo. l. c. 438, and cases cited.]

Able counsel for defendant earnestly and ingeniously labor to sustain the proposition that plaintiff's cause of action rests entirely upon the allegation that the car *started*, and supplement the averment with the words, "of its own accord," but in so doing they ignore the three plain assignments of negligence upon which the action is bottomed, in the absence of which, no injury would have resulted to plaintiff by the starting of the car which ran off of the spur track on to the main track and collided with the train under which plaintiff was working repairing a car for defendant. In such circumstances the fact that another element of causation intervened, to-wit, the attempt of the mining crew to move the car west a short distance to permit the track to be moved far enough from the power house to allow the car to pass on to its destination, the lumber yard of the mine, did not break the legal connection between the brakeless condition of the car and the placing of it on the brink of the sharp down-grade toward the

main track and the injury which flowed to the plaintiff. The leaving of a car so heavily loaded on the brow of the down-grade without setting the brakes thereon, and covering the brakes with heavy timbers so that it could not be used to stop or retard the speed of the car, furnished ample evidence of negligence on the part of the defendants concurring with the starting of the car by the mining crew to justify the jury in reaching their verdict. The law imposed upon the defendants the duty of using reasonable care that this heavy-loaded car should not be left without brakes set or so covered up that they could not be used, at the head of this decided down-grade, and they create an unusual or extraordinary risk to its employees and passengers on its main track. The averments of the petition, moreover, were sufficiently broad to admit the evidence as to the starting of the car by the mining crew, even if defendants had not expressly tendered the issue that the mining crew started it without the knowledge or consent of defendants, and the further proof that it was the common usage and practice of the mining crew to move cars set in on this spur track for the use of the Bankers Mine, with the knowledge and acquiescence of defendants, and thus meet the defense set up of interference by persons for whom defendants were not responsible. We think the trial court correctly interpreted the pleadings in admitting such evidence and that it did not tend to establish a case outside of the pleadings. Pursuing the same line of argument defendants next insist that the absence of the derailing switch was not the cause of the accident. In support of this contention they assert that defendants' brakeman set the brake of this car Saturday evening, *and that this was undisputed.* On the contrary the witness Eagan testified that when his crew went to the car to move it west, he kicked the block out and the car immediately started and he climbed on to stop it, and the brake was in such a fix he could not stop it; "that the brake was all loose; the shoes." Mr.

Davis, the foreman of this crew, a witness for defendants, testified that the brakes were loose and covered by the timbers so that they could not be worked. It is true that the defendants' brakeman testified he set the brake Saturday before he left the car, but on cross-examination he gave as his reason that he always set the brakes when he left a car in that way. It was for the jury to find whether in fact he set the brakes or did not. The fact that he testified that he set the brake did not require the jury to so find, or the circuit court or this court to assume that it was an undisputed fact. In the light of his whole examination, in connection with the fact that it was loose on Monday and so covered by the logs that no one could twist the brake-rod, the jury were authorized to find that he did not set it. There was evidence also that at times the Frisco Railroad did switching on this track, but there was no evidence that the Frisco Company moved this car, and when it is considered that no car could have gone east on this switch track without pushing this car east, and that it was not possible to get this car by the power house on account of the great width of its load, and it was found on Monday just where it was left on Saturday, the suggestion as to the Frisco Company would seem to have no weight whatever.

Learned counsel for the defendants urge that because the car had stood there all day Sunday, the absence of a derailing switch was in no sense the cause of the injury and say, "Suppose there had been a derailing switch, if the mining employees had desired to run this car out on the main track, what was to prevent them connecting up the derailer so that the car could pass over the switch?" and assert that no railroad company can be required to take such precautions as will absolutely prevent the possibility of accident from *malicious* interference with cars on its tracks, and cite us to Fredericks v. Railroad, 157 Pa. St. 103 (22 L. R. A. 306). It seems quite obvious to us that this argument is *de-*

*hors* the record.  Here there was ample evidence to go
to the jury to establish that this spur track was largely,
if not principally, used to accommodate the mine com-
pany; that cars were set in on it loaded with supplies
for the mine, and that with the knowledge and acquies-
cence of defendants, the mining company's employees
were in the habit of moving the cars backwards and for-
wards to the place of unloading, and if such was the
fact it was not a malicious interference with the car,
but something likely to occur and to be expected, and a
circumstance to be guarded against by having the brake
properly set or at least in such condition that the mining
crew could set it when moving the car, as much so as if
its own servants were sent to move it, and the court did
not permit a recovery upon the proof alone of the ab-
sence of a derailer, nor of the negligent condition of
the brake, but required the concurrence of both.  Nor
did the court assume as a matter of law that it was neg-
ligence not to have a derailing switch, but left it to the
jury to say whether in the light of all the circumstances
a derailing switch or other like device should not have
been provided.

Learned counsel for the defendants devote much
time and space to the enforcement of the proposition
that the master is not required to furnish any particular
kind of appliances; that he has a right to transact his
business in his own way, and if he sees fit to use ma-
chinery of an old pattern, that it is not a matter of com-
plaint for the servant.  With this contention the plain-
tiff refuses to take issue, because he insists that the trial
court did not hold to the contrary.  The rule is well set-
tled in this State that there is no obligation on the part
of the master to furnish absolutely safe appliances, nor
is a railroad bound to adopt every new invention,
though an actual improvement it may be, but it is the
duty of the company to use reasonable care and precau-
tion in procuring and keeping its appliances in good
condition and order, and it cannot remain wholly in-

different to the improvements of the day. [Huhn v. Railroad, 92 Mo. 440; Hamilton v. Coal Co., 108 Mo. 364.]

In these cases it is left to the jury to say whether under all the facts and circumstances it was negligence in the company not to have had a derailing switch at the junction of this switch track with the main track of the defendant's line. There was evidence in this case tending to show that derailing switches were in general use by the defendants on their line of railroad at the time of the injury to plaintiff, and that it was a common device used for the purpose of preventing cars escaping on to the main tracks from switches. The fact that there was no derailing switch was not negligence *per se,* and it was not so treated by the court. As said by this court in Jones v. Railroad, 178 Mo. l. c. 548: "Since the law imposes on the master no higher degree of care than that which it denominates reasonable, it does not require him to furnish absolutely safe or even the best known appliances. Yet when his conduct in this respect is on trial, it is proper for the jury to know *what appliances are in common use in that kind of business.* It has been said by a very high authority that in the operation of a dangerous business, the master is guilty of negligence if he fails to furnish the best, well known and reasonable attainable implement." [Mather v. Rillston, 156 U. S. 391.] We do not understand that case as laying down any stricter rule in reference to the master's duty in that respect than that it was to do all that a reasonably prudent master, mindful of the dangerous character of his business, would ordinarily do to protect the lives of his servants. That is the law in this State. We do not, therefore, say that the defendant in this case was negligent because the side track was not equipped with the derail switch, although it is quite evident that if it had been so equipped this accident would not have occurred. Therefore, the question of whether the spur track in this case was a reasonably safe appli-

ance without a derailing switch was a question for the jury, and such is the view taken by the circuit court, and it was left to the jury to find whether the injury to plaintiff resulted in part on account of the absence of a derailing switch, and was properly submitted to them in connection with the other fact that the car was left with the brake unset and so covered up by the logs that it could not be used to regulate the speed or stop the car if it was started.

In view of the foregoing conclusion it is unnecessary to discuss *seriatim* the various objections to the first instruction given on behalf of the plaintiff, inasmuch as it conforms to the views already expressed, with the exception of the last point made against it, which is, that it ignores the assumption of the risk by the plaintiff. It will be conceded that the question of assumption of the risk of this car running down on him while at work repairing a car in the yards near Joplin, by the plaintiff, was not presented to the circuit court in any instruction asked by counsel for defendants, unless it may be said it was included in the demurrer to the evidence. Treating it as presented by this peremptory instruction, we have no hesitancy whatever in holding that plaintiff did not, under the facts of this case, assume any such unusual and extraordinary risk. This identical point was ruled adversely to defendants' contention in Jones v. Railroad, 178 Mo. l. c. 543, in which Judge VALLIANT, speaking for this court in banc, said: "Proof, therefore, of the mere fact that the servant was injured in the master's service, is not sufficient to make out a prima facie case for the plaintiff. To that extent, the authorities cited in the brief for appellant sustain those propositions. [Yarnell v. Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 111.] But when cars are found running loose and unattended on the main track at a time and place when and where they are liable to cause the wreck of a regular train, it can not be said that the danger so incurred is one of the

usual and ordinary hazards incident to the business. It is not a usual and ordinary occurrence in a prudently managed business for cars to be found running loose in that manner; it does not ordinarily occur unless someone has neglected his duty, and it is not, therefore, a risk assumed by the servant . . . It was the duty of the master to use reasonable care to prevent those cars escaping, and, therefore, when they are found running loose, so as to imperil the life of the servant who was in the due performance of his duty, the presumption is that the master did not use reasonable care to hold his cars on the side track, and the burden is on him to prove that he performed his duty in this respect; it devolves upon him to explain the occurrence. It was not attempted, on the part of defendant, to prove that cars with good brakes and the brakes properly set, were liable to escape under conditions that might reasonably be anticipated. On the contrary, when confronted with the fact that the side track was not equipped with a derail switch, the defendant offered evidence to prove, and now contends, that with good brakes and the brakes properly set, the cars were secure under ordinary conditions. But if the brakes were not set or the cars blocked, they were liable, under ordinary conditions, to do just what these cars did; therefore, when it was shown that they did escape, the presumption arose that there was something wrong, either with the brakes or their setting.'' All of which applies with equal force to the facts developed in this case, and the jury have found the brakes were not set and the car left on the brow of a descending grade to the main track and that there was no derail switch. It is clear that plaintiff, who had no notice of the placing of the car or that the brakes on it were left loose and unset, did not assume the risk of its running down upon him while he was engaged in an apparently safe place repairing a car for defendant. The court committed no error in not holding as a matter of law that plaintiff assumed the risk of said loose

car running down upon him. And, moreover, this is a civil case, and if defendants desired after all the evidence was in to submit the question of fact to the jury, it was their duty to have prayed an instruction to that effect. We are cited by counsel for defendants to Fredericks v. Railroad, 157 Pa. St. 103, on the proposition that as the car was started by the mining crew, as they claim, without their consent or knowledge, there was no liability on part of defendants. There is little or no similarity between the facts of the two cases. In the Fredericks case, the railroad company established, not only that it had a derailing switch at the junction of the spur track with its main line, but that the cars set on the spur track were provided with proper brakes and they were all tightly set and that a third person maliciously turned the derailing switch so that cars from the spur track could run out on the main track and then deliberately loosened the brake and started the car out on the main track, and that this occurred so shortly before the accident that defendant had no notice of it. The jury found that the defendant company had exercised all reasonable care to provide against the cars on the spur track getting on to the main track. That the jury properly so found there can be no doubt, but that case is the antithesis of this. Here there was no derailing switch, here the brakes were not only not set, but so covered with heavy logs they could not be; here instead of the malicious interference of a third person, the mining crew in endeavoring to move the car back a short distance to move the track, were doing what was daily being done with the defendants' knowledge and the consent, or their presumed acquiescence. The two cases could not well be more dissimilar.

II. Error is assigned in the admission of testimony. We have already held that it was competent to show the absence of the throwing off or derailing switch; the fact that such a device was in common use by the defendants, themselves, on the same railroad; the purpose

for which such a switch is designed. All this evidence was clearly within the issues made by the pleadings.

There was no error in permitting Eagan to testify as a practical railroad man, engaged in the construction and repairing of tracks, laying new tracks. It was not necessary that he should have been a scientific railroad man to testify what the purpose of a derailing switch is or where it should be placed. Its purpose is so simple and it is so common that three years' experience in the construction of railroads ought to suffice to teach a man of ordinary intelligence that if there ever is any use for such a device, the junction of this spur track with defendants' main track was a proper place for it.

There was no impropriety in permitting Beasley, who had a contract with defendants for loading its cars with gravel, to detail how the cars were set in on this spur track and for what purpose, and how he moved the same back and forward in loading them. It tended to disprove the claim of defendants that they did not permit any one but their switching crew with an engine to move cars on this spur track. It went to show that the defendants did know that parties were moving cars about on this spur track from place to place. The objections to the introduction of evidence were properly overruled.

III. The further insistence is that the court erred in refusing defendants' instructions. Of these the fourth and seventh asked the court to declare the law to be that if the accident was caused by the act of the mining company's employees in negligently moving the car, then plaintiff could not recover. They entirely ignore the defendants' own negligence in leaving the car with the brakes loose and heavily laden on the brink of a sharp down-grade, and the fact that the mine employees were constantly moving cars set in for the mine, back and forward on this track, and that their negligence concurring with that of defendants would not relieve the latter of their responsibility for their own

proximate cause of the injury to the plaintiff. The court did not err in refusing them. The fifth and sixth sought to have the court declare as a matter of law that plaintiff could not recover on the ground that defendants had negligently failed to put in a derailing switch at the junction of this spur track with the main line. As already said, whether they were negligent in so failing was left to the jury to find under all the evidence, and consequently no error occurred in refusing them, and declaring as a matter of law that it was not negligence to have failed in so doing. We think the case was fairly and well tried and properly submitted to the jury, and their verdict is supported by the evidence.

IV. The fifth instruction for the plaintiff reads as follows: "The court instructs the jury that if they find a verdict for the plaintiff, they may allow him such damages not exceeding ten thousand dollars as they believe he has sustained by reason of the injuries, if any, to his left arm caused by the collision described in the evidence."

This instruction is assailed on the ground that it does not define the elements of damage which the jury should take into consideration in arriving at their verdict. No instruction on the measure of damages was asked by the defendants and no attempt was made by the defendants to point out the proper elements of damages in such a case or to modify the general language of the instruction given for the plaintiff. In Browning v. Railroad, 124 Mo. 55, an instruction was given that if the jury found for the plaintiff they would assess her damages at such a sum as in their judgment would be a fair and just compensation for the loss of her husband, not exceeding five thousand dollars. In that case, as in this, it was urged that the jury were not properly instructed as to the measure of damages, and Hawes v. Stockyards Co., 103 Mo. 60, and McGowan v. Ore & Steel Co., 109 Mo. 518, were relied upon as sustaining the objection, but it was said by this court: "The de-

fendant asked no instruction on the measure of damages whatever. No attempt was made by it to point out the proper elements of damage in such cases or to modify the general language of the instruction. The instruction is not erroneous in its general scope, and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel for defendant to ask the modifications and explanations, in an instruction embodying its views. The court is not required in a civil case to instruct on all questions, whether suggested or not, and as there is nothing in the amount of the verdict to indicate that the jury were actuated by any improper motive in their assessment, the general nature of the instruction is no ground for reversal.'' It is urged, however, by counsel for defendants that that instruction was proper in the case where a widow is suing for the loss of her husband, but no reason is assigned why a different rule should obtain between a case of that character and one like the present one.

In Wheeler v. Bowles, 163 Mo. 398, where the plaintiff sued for damages resulting from the dislocation of her shoulder the only direction was that if plaintiff had become permanently injured, lame and disfigured by such dislocation, the jury would find for the plaintiff in the sum not exceeding the amount in the petition. That instruction was challenged because the elements of damages were not given to the jury, and in answer to that contention it was said: ''It is urged as error that the circuit court did not instruct the jury as to the rule by which they should estimate plaintiff's damages. As to this point it is only necessary to remark that this is a civil action and mere non-direction is no ground of error in this court. The defendant did not submit any instruction on the elements of damages; neither did plaintiff. If defendant desired the jury restricted to certain elements, he should have offered an appropriate instruction on that subject.''

The instruction in this case confined the jury to the damages sustained by reason of the injuries, if any, to plaintiff's left arm caused by the collision described in the evidence. The instruction, according to the foregoing authorities, was sufficient as a general instruction, and if there were any peculiar modifying or qualifying facts which the defendants desired the jury to take into consideration, it was clearly their duty to have submitted them in an instruction to the court.

As to the amount of the verdict itself, the evidence shows that the plaintiff was a young man 26 years old, strong and active and holding a lucrative position and by reason of this injury he has permanently lost the use of his left arm. Taking into consideration his age, health and capacity to earn a livelihood, and the probabilities of life, and that he must henceforth go through the world hopelessly maimed, and that by the loss of this arm he is necessarily debarred from his profession as a car repairer, it cannot be said that a verdict of $7,500 is such as to shock the sense of justice.

In Bolton v. Railroad, 172 Mo. 92, the plaintiff was a farmer thirty-five years of age and by accident both bones of his lower limb were broken and the flesh lacerated. Fifteen months after the accident a large bone had not united, but the surgeon was of the opinion that the bone would finally unite. It was held that the verdict of $9,000 was not so excessive as to authorize a setting aside of the verdict. In Henderson v. Kansas City, 177 Mo. 477, a boy nineteen years of age was deprived of his right arm and suffered great physical and mental pain. It was held that a verdict of $8,000 was not excessive. In that case a number of verdicts that had been sustained by this court as not excessive were cited, among others, Dougherty v. Railroad, 97 Mo. 647, in which a judgment for $12,000 for the loss of a left arm was affirmed.

We think there is nothing in the amount of this ver-

dict which would justify this court in interfering with it on the ground that it was excessive.

The judgment is affirmed. *Fox, J.,* concurs; *Burgess, P. J.,* not having heard the argument takes no part in the decision.