PASQUALE D'AMBRA, Respondent, v. PHILIP RHINE-
LANDER, Appellant.

Evidence — action brought by plaintiff to recover under
contract alleged to have been made by defendant's attorney
for and in the interest of defendant by which plaintiff was
to receive certain stock or cash in lieu thereof for services in
erecting buildings — erroneous exclusion of written contract
between defendant and his attorney reciting that the latter
was indebted to defendant and that the stock in question
was assigned to him as security.

Defendant, the executor of an estate, loaned money to plaintiff, a
builder, to be used in the erection of two apartment houses upon
land owned by plaintiff. Before the buildings were completed plaintiff
became involved in financial difficulties and at the suggestion and
advice of the attorney of defendant, plaintiff conveyed the property
to two holding corporations organized to take the title thereto, the
stock of which was issued in the name of defendant's attorney. The
defendant, it was said, would advance not only the moneys called
for by the original contract but also whatever other moneys were
necessary for the removal of liens on the buildings. Plaintiff was
to manage and supervise the construction and be the agent to collect
the rents. In compensation, either he would receive an assignment
of the entire capital stock of the holding corporations, subject to the
loans and advances made by the estate of which defendant was
executor, or else he would be paid in cash a certain amount, the value
of his interest in the land, with interest, fifteen per cent of the cost
of construction for his services as supervising builder, and five per
cent of the cost for services as manager after the buildings were
completed. The plaintiff brings the action against defendant to
recover the compensation agreed upon at the time of the transfer
of the property to the holding corporations. The making of such
arrangement by the attorney is practically undisputed, but defendant
denies that he ever heard of the arrangement before the action and
testified that it was not made by him or for or in his interest and
claimed that it was made by his attorney without his knowledge
and consent. Upon the trial plaintiff attempted to prove that defend-
ant was the beneficial owner of the corporate shares, and to that end
gave evidence that the defendant had received a transfer of the shares
from the attorney. To offset this testimony defendant offered in evi-

dence a written contract between himself and his attorney which recited that the attorney was indebted to him individually and as representative of others, and that the stock of the holding corporations was transferred to defendant as security for the payment of any moneys found due to defendant upon an accounting, and provided that upon payment thereof the property should be returned to defendant's attorney. This contract, offered to show the purpose of the transactions between plaintiff and defendant's attorney, and to repel the inference that the transfer was in execution of the contract alleged by the plaintiff, was excluded. This ruling constitutes reversible error, since the rule is fundamental that where an act is proved which is claimed to constitute an admission, the party against whom it is proved is free to rebut the admission by an explanation of the act. The error is not cured by the admission of the defendant's oral testimony in general terms to the effect that the transfer was intended as security for a debt, since he had the right to fortify his own testimony in any way that he could, and the writing reinforced and amplified the vagueness of the spoken words.

*D'Ambra* v. *Rhinelander*, 202 App. Div. 727, reversed.

(Argued October 27, 1922; decided November 21, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 21, 1922, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Frank C. Laughlin, Spotswood D. Bowers* and *Stewart W. Bowers* for appellant. The court committed reversible error by refusing to permit the defendant to introduce in evidence the deed of trust, dated May 1, 1918. (*Page* v. *Krekey*, 137 N. Y. 307; *Eakin* v. *Brown*, 1 E. D. Smith, 36; *Parshall* v. *Klinck*, 4 Barb. 203; *Reynolds* v. *Port Jervis*, 32 Hun, 64; *Abenheim* v. *Samuels*, 5 N. Y. Supp. 217; *Hauptman* v. *Hauptman*, 160 App. Div. 917; *People ex rel. Packwood* v. *Riley*, 232 N. Y. 283; *People* v. *Barberi*, 149 N. Y. 256; *Kain* v. *Larkin*, 131 N. Y. 311; *Duryea* v. *Zimmerman*, 143 App. Div. 60.)

*Robert H. Ernest* for respondent. There was no error in excluding the agreement between the defendant and his lawyer made in May, 1918, seven years after the

contract with the plaintiff. (*Coon* v. *Miller*, 151 App. Div. 631; *McLaughlin* v. *Nat. Mohawk V. Bank*, 139 N. Y. 514; *Newhall* v. *Appleton*, 102 N. Y. 133; *Bonynge* v. *Field*, 81 N. Y. 159; *Hindley* v. *Manh. Ry. Co.*, 185 N. Y. 335; *Bremer* v. *Manh. Ry. Co.*, 191 N. Y. 333; *Wright* v. *Gregory*, 9 App. Div. 85; *Link* v. *Sheldon*, 136 N. Y. 1; *Booth* v. *Powers*, 56 N. Y. 22; *First Nat. Bank, etc.*, v. *Ocean N. Bank*, 60 N. Y. 278; *Lichtenstein* v. *Fisher*, 6 App. Div. 385.)

CARDOZO, J. In 1910 the D'Ambra Construction Company was building apartment houses on One Hundred and Ninety-ninth street and also on Hull avenue in the city of New York. The plaintiff, who was substantially the sole stockholder, was an experienced builder, and had charge of the work. He sought and obtained a building loan contract from the estate of Cornelia B. Kip, represented by its executor, the defendant, Philip Rhinelander. Ninety-four thousand dollars was to be loaned, forty thousand on one parcel and fifty-four thousand on the other. The mortgages were prepared by one Hartcorn a lawyer. Hartcorn's firm, the defendant and the Kip Estate had offices in common.

In August, 1911, mechanics' liens for about $22,000 were filed against the mortgaged parcels. Damage by fire to one of the buildings increased the builder's complications. The plaintiff was advised by Hartcorn to convey the property to holding corporations organized to receive the title. The defendant, it was said, would advance, not only the moneys called for by the contract, but also whatever other moneys were necessary for the removal of the liens. The plaintiff would continue to manage and supervise the construction, and would be the agent to collect the rents. Compensation would be made to him in one or other of two ways. Either he would receive an assignment of the entire capital stock of the holding corporations, subject only to a mortgage to

secure the loans or advances of the defendant and the Kip Estate; or else he would be paid in cash as follows: $25,000 with interest from October 9, 1911, the value of his own investment in the land; fifteen per cent of the cost of construction for services as supervising builder; and five per cent of the cost for services as manager after the buildings were completed.

The making of some such arrangement by Hartcorn is hardly, if at all, disputed. The litigation turns upon the issue whether he made it in his own behalf or in behalf of the defendant, and if in behalf of the defendant, with the latter's knowledge and consent. The plaintiff says that the defendant was present at the most important interviews; approved of every promise that was made; and took title in the name of corporations, but in truth as beneficial owner. The defendant denies that he ever heard of the arrangement or of anything like it until some time in 1919, when the action was begun. The theory of the defense is that the promises, if made, were those of Hartcorn personally; that Hartcorn and not the defendant was the owner of the shares in substance as well as in name; that Hartcorn was to receive the profits of the enterprise if successful; and that the defendant had no interest except as mortgagee.

Holding corporations, the Aloha Realty Company and the Narcorth Realty Company, were organized in September, 1911. The entire stock of both corporations was issued in Hartcorn's name, with the exception of qualifying shares, which were issued to employees in his office. The property on One Hundred and Ninety-ninth street was transferred to one corporation, and the property on Hull avenue to the other. With the aid of the defendant's advances, made from the Kip moneys, and of the plaintiff's supervision, the work was carried to a close. Another parcel, situated on Villa avenue, was afterwards acquired by the Aloha Realty Company, and the plaintiff again supervised the construction upon the promise of a like

reward. The Hull avenue houses were sold in April, 1912. The Aloha Realty Company still holds the title to the others. In March, 1919, upon the defendant's disclaimer of liability, this action was begun. It is brought upon the theory that the defendant became personally responsible for the payment to the plaintiff of the promised compensation. There was a verdict for $77,064, which, on appeal to the Appellate Division, was unanimously affirmed.

We state the controversy in barest outline. The outline is enough to reveal the ownership of the beneficial interest in the holding corporations as a fact of capital importance to the seeker after truth. The contract had in view an option, which would be exercised one way or the other as there might seem to be a small chance or a large one of profit to the owner. If the chance was small, the shares would be assigned to the plaintiff, subject to a mortgage for the loan. If the chance was large, the shares would be retained as a profitable investment, and the plaintiff would be paid in cash. In any estimate of probabilities, the jury would be likely to conclude that the man who was to profit was the man who was to pay. Upon the crux of the case, the defendant's participation in the contract, there was oath against oath. Hartcorn, if the real owner, was probably speaking for himself; if the owner in name only, he was probably speaking for another. The touchstone that would bring out the truth was the ownership of the shares.

The plaintiff was alive to the significance of the situation. He was not satisfied to rest upon proof that the shares were in Hartcorn's name. He showed besides that in 1917 or 1918 they were transferred to the defendant. Here unexplained was an admission decisive almost of the controversy. The transfer was put before the jury as the confirmation of an existing title, the recognition of a duty assumed at the beginning. The defendant could hardly hope to prevail unless he broke the force of

the admission by some convincing explanation. He was allowed to state in the most general terms that Hartcorn transferred the shares as security for a loan. There was little that was convincing about this statement standing by itself without voucher or document or particulars to confirm it. Confirmation was offered and rejected. The defendant produced a written contract between himself and Hartcorn. It is dated May 1, 1918, and is acknowledged the same month. It is an elaborate document covering twenty printed pages. It recites that Hartcorn is the president and the majority or sole stockholder in the Aloha Realty Company and the Narcorth Realty Company, as well as other corporations which it names. It recites a claim on the part of the defendant that Hartcorn is indebted to him individually and as the representative or executor of others. It then describes the property transferred and delivered to the claimant as security for the payment of any moneys found due upon an accounting, and provides that upon such payment the property shall be returned. Included in the security are the shares of the Aloha Realty Company and those of the Narcorth Realty Company, as well as shares of many other corporations engaged in building operations. The contract which thus exhibited the purpose of the transaction was offered in evidence and excluded.

We are unable to sustain the ruling. There was an attempt to charge the defendant with an act in the nature of an admission. The rule is fundamental that he was free to rebut the admission by an explanation of the act (*Ferris* v. *Sterling*, 214 N. Y. 249, 254, and cases there cited). The only question is whether there is reasonable ground for the belief that the evidence if accepted would have affected the result. We think its significance, if made clear to the jury, would have been great and perhaps controlling. The plaintiff would have us believe that in the transactions in controversy as well as in many others, Hartcorn was the defendant's

" dummy," doing the defendant's bidding and seeking nothing but the defendant's profit. The contract which the court rejected leaves us with another picture. The docile and disinterested " dummy " is exhibited as an owner in his own right, asserting without protest his title to the shares at the very moment that he subjects them to the burden of a pledge. He is at odds with his client as to many things, but as to his title, not at all. The enterprises conducted by these many corporations are his. He has been managing them for himself, and not as the representative of another. One would have to follow the contract through all its twenty pages to see how that relation emerges as an assumption from beneath its covenants and recitals. The record does not suggest the possibility that covenants and recitals are the product of collusion. Strained relations had developed between the defendant and his former lawyer, and they were acting at arms' length. If the jury understood the contract, they could hardly fail to conclude that Hartcorn was in substance as well as in name the owner of the shares. If they found that he was to enjoy the profits, they might find, not unreasonably, that he was to bear the attendant burdens.

The trial judge took the view that the contract should be rejected because the defendant had already been allowed to state that the transfer was accepted to secure the payment of a debt. This is an inadequate reason for the exclusion of evidence so cogent. " The defendant had a right, * * * to fortify his own testimony in any way that he could " (*Page* v. *Krekey*, 137 N. Y. 307, 316). The writing reinforced and amplified the vagueness of the spoken word. What was said was loose and general, without corroborating circumstance or confirmatory document. Standing alone, it was subject to suspicion as the facile excuse of guilt driven to a corner. Document and circumstance would tell a different tale.

Other objections to the recovery have been argued by

appellant's counsel. The unanimous affirmance at the Appellate Division withdraws them from our power of review.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.