TIMOTHY J. MARA, Appellant, *v.* JAMES J. TUNNEY, Also Known as GENE TUNNEY, Respondent, Impleaded with WILLIAM GIBSON, Defendant.

First Department, July 1, 1932.

*Martin W. Littleton* of counsel [*Charles A. Collin, John L. Wells, Thomas L. Hughes* and *George F. O'Neill* with him on the brief; *Collin, Wells & Hughes*, attorneys], for the appellant.

*John M. Harlan* of counsel [*Emory R. Buckner, Herman T. Stichman* and *George E. Johnson* with him on the brief; *Root, Clark & Buckner*, attorneys], for the respondent.

McAvoy, J. An agreement was made admittedly between Timothy J. Mara, and James J. Tunney and William Gibson, on or about April 3, 1926, to arrange for defendant Tunney a boxing contract with one Jack Dempsey, then heavyweight champion of the world.

Mara's version is that in April, 1926, he entered into an agreement with Tunney and Gibson, Tunney's manager, whereby in consideration of his co-operating with them in procuring for Tunney a boxing match with Dempsey during the year 1926, Tunney and Gibson agreed to pay him ten per cent of Tunney's share of the purse on that match, if Tunney won, and thereafter twenty-five per cent of all moneys received by them from the exploitation of Tunney as the heavyweight champion.

Tunney's version was merely to the effect that he approved of certain suggestions of Mara; that he offered Mara $25,000 if the bout could be arranged in New York State, but that Mara said he was interested only in the sport and not in the money.

In a letter dated June 6, 1926, Tunney wrote to Mara virtually confirming Mara's version of the agreement. No mention was made in the letter that the bout would have to take place in New York State. A condition so vital would not be excluded if it were a *sine qua non* to the effectiveness of the contract. We think proof on this subject lacked weight to support a verdict against the plaintiff's proof by documents.

Tunney testified that plaintiff had told Gibson over the telephone that he, Mara, would prevent the bout from taking place in the State of New York, unless he got a contract for twenty-five per cent from the Tunney-Dempsey match, and from all exploitation of Tunney, and containing the further suggestion that the contract was contingent upon Tunney's winning the championship in a State where a decision was permitted to be rendered.

Tunney also told Gibson that Mara could have ten per cent of the first match, but that it would have to come out of Gibson's share, and that Gibson reported that plaintiff had consented to ten per cent of the first match, but would have to have twenty-five per cent if defendant won the championship. Tunney said: " Well, I won't agree to that."

Tunney asserted that he told Gibson that he objected to the contract because it did not cover the condition of holding the match in New York, and Tunney states that Gibson told him that Gibson tried to put in the condition in case the match comes to New York, but that Gibson urged him to sign the contracts without that condition.

This testimony, which was objected to and exception taken, was intended to establish whether Mara made any threats which induced the signing of the Tunney letter of June 6, 1926, and the contract inclosed, and whether there was an understanding between plaintiff and defendant through Gibson that plaintiff's contract was contingent on the match being held in New York.

We think that it was prejudicial to plaintiff to permit defendant Tunney to testify to the alleged conversations said to have occurred on May first and second and on June fifth, with Gibson, and in admitting in evidence letters and telegrams passing between Tunney and Gibson. Certainly these communications of May first and second and early in June could not have influenced Tunney's state of mind on April third, nor could they have shown his state of mind on April third, the date of the original agreement.

There was manifest error in not striking these telephonic communications from the record, and in submitting this damaging evidence to the jury even after the defense of duress was withdrawn by defendant.

We think, too, that the court erred in charging the jury that they might find that the agreement of April third was based on the plaintiff's exerting illegal influence upon the Boxing Commission and the License Committee, and that in that case they should find a verdict for the defendant. No proof to substantiate such a charge was offered.

The preponderance of the evidence, particularly in the documentary proof, warrants a reversal of the judgment for defendant, and a new trial for the plaintiff.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

MERRELL, MARTIN and O'MALLEY, JJ., concur; FINCH, P. J., dissents and votes for affirmance.

FINCH, P. J. (dissenting). The trial of this action presented an issue of fact concerning the terms of an oral agreement which concededly had been made between the parties. The issue of those terms may indeed be reduced to a single issue, namely, whether the contract was conditioned upon the Dempsey-Tunney contest being held in the State of New York. This issue turned upon the credibility of the witnesses respectively on behalf of the plaintiff and defendant, and the probabilities in the light of the surrounding facts and circumstances. The action was tried at length through a period of nine days, in the course of which the facts and circumstances leading up to the making of the agreement and bearing upon the issue involved were fully developed. The printed record comprises a volume of over 850 pages. In my judgment the verdict of the jury in favor of the defendant Tunney not only cannot be said to be against the weight of the evidence but is in accordance therewith. This is demonstrated by the fact that on April 3, 1926, when the agreement upon which plaintiff bases his cause of action was alleged to have been made, Tunney already had a written con-

tract with Rickard for a match with Dempsey in Jersey City. Both Rickard and Tunney wanted the fight to take place in New York, but had been unable to obtain the consent of the Boxing Commission. Having already committed himself with Rickard to a match with Dempsey, the only reasonable purpose for engaging the services of the plaintiff would be to procure the holding of the bout in New York, which all parties desired, and not to arrange a match with Dempsey, which, as noted, had already been arranged.

The plaintiff makes much of the fact that in a letter of June sixth, written by Tunney to the plaintiff, which letter purports to set forth the agreement between the parties, there was no reference to the condition that the bout must be had in New York. The defendant Tunney gave a reasonable and probable explanation for such exclusion, namely, that it was because of the advice and request of the plaintiff that the undertaking of the latter to procure the authorization of the New York State Boxing Commission of a contest in this State between Dempsey and Tunney be kept secret.

Notwithstanding all the foregoing, however, it is contended that the judgment should be reversed and a new trial had because of certain alleged errors of law in the course of the trial. *First*, it is urged that there was error in the admission in evidence of communications and conversations between Tunney and Gibson subsequent to the date upon which the agreement in suit was made upon the ground that this evidence of transactions subsequent to the making of the agreement was not competent to show the contract that was made or the state of mind of Tunney upon the prior date. The objections would be good if the aforesaid evidence was admitted for the purposes referred to. It was, however, expressly restricted exclusively to showing the circumstances under which Tunney wrote the aforesaid letter of June sixth. It was also admissible as confirming the testimony of Tunney respecting his version of the agreement, which version had been assailed as an afterthought and as recently trumped up as a defense to the action. At the time of these communications there was no controversy between the parties and hence no motive for the fabrication of evidence. This evidence tends to show the true background against which the letter of June sixth was written and to explain its contents. Said letter was relied upon by the plaintiff as a damaging piece of evidence against Tunney and as inconsistent with his testimony at the trial. Standing alone and unexplained, the letter undeniably has that tendency. Under such circumstances it is well established that the true meaning of the letter may be explained by other evidence.

In *Ferris* v. *Sterling* (214 N. Y. 249) Judge CARDOZO, writing for

the court, said: " It is also the rule that where declarations or acts of a party are used against him as admissions tending to show an inconsistent attitude, it is always open to him to explain the apparent contradiction." Again, in *D'Ambra* v. *Rhinelander* (234 N. Y. 289), Judge CARDOZO said: " The rule is fundamental that he was free to rebut the admission by an explanation of the act."

The case first cited also is authority for the proposition that said evidence was admissible in support of the version of defendant Tunney of the agreement of April third with the plaintiff when that version was attacked as a recent fabrication.

In introducing the evidence to which, as above shown, a party is entitled, he is not limited to his own testimony but may introduce evidence of acts and transactions with third parties. (*D'Ambra* v. *Rhinelander, supra.*)

It is further urged by the appellant that there was error in the charge of the court to the effect that if the agreement of the parties was that plaintiff should use political considerations or other means independent of the merits to obtain the consent of the Boxing Commission to the holding of the Dempsey-Tunney bout in New York, the verdict should be for the defendant.

The appellant bases this contention upon the premise that there is no evidence in the record which would support such a finding. The record, however, fairly shows that the only possible reason for the willingness of Tunney to pay to the plaintiff the large percentage of his earnings accruing out of his bout with Dempsey was, that Mara would accomplish that result through the use of his friendship and supposed influence with the members of the Boxing Commission and others. Tunney testified that Mara promised to see the Governor about the matter if necessary, and there is testimony that Mara admitted an unsuccessful effort in that direction in which the Governor refused to discuss the matter at all. Mara admitted having had private conversations with certain of the Boxing Commissioners. These activities, coupled with the request of Mara that all reference to getting the match in New York be omitted from the agreement upon the ground that, if such proviso were made public, there would be trouble, constitute evidence from which the jury might well draw the inference that Mara should endeavor by influence to procure the consent of the Boxing Commission to the contest being held in this State.

There were thus no errors of law requiring a reversal of the judgment.

In reality, the difference between the majority and minority opinions is upon a question of law. If the evidence which is herein

held admissible is excluded, the documentary evidence is stronger; whereas, if the evidence is admissible, the verdict of the jury is clearly right.

The verdict of the jury, as noted, being amply sustained by the evidence, it follows that the judgment should be affirmed.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.