252

## MARTUCCI et al. v. BROOKLYN CHILDREN'S AID SOC.

### No. 127.

Circuit Court of Appeals, Second Circuit.

Jan. 27, 1943.

Charles A. Loreto and Louis Napolitano, both of New York City, for appellants.

Alfred W. Andrews, of New York City (William L. Shumate, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This suit was brought by a resident of the State of Connecticut, the father of an infant who sued individually and as guardian ad litem of the infant. It is against a New York corporation which maintains at Far Rockaway, New York, a nursing home for children called the Wave Crest Convalescent Home. Jurisdiction based on diversity was duly alleged and is not questioned.

The case was tried to a jury which disagreed. Following that, the court directed a verdict and judgment for the defendant on motion made pursuant to Rule 50(b), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. The appeal is from the judgment so entered.

There was practically no dispute as to any of the pertinent facts. The plaintiff who sues by his guardian is a little boy who when about two years old had his right leg partially disabled by an attack of infantile paralysis. He was accepted as a charity patient in what is called the Beeman House of the defendant's home at Far Rockaway and was given treatment there for the after effects of his sickness for a little over two years before he was hurt. The defendant has for many years maintained a hospital for patients needing such care and is so organized and managed that it is entitled to the legal status of a charitable institution.

The Beeman House had formerly been a private residence. It had been remodeled enough to provide room for about thirty-six boys and girls and was supervised by a competent director who had the assistance of an adequate medical and nursing staff to care for the patients.

The only negligence which the plaintiffs alleged and supported with enough proof to make that, in any event, a question for the jury was in the failure of the defendant to exercise due care to maintain the premises in a safe and suitable condition for the boy to use in receiving the care which the defendant undertook to provide. This alleged lack of due care was in turn

confined to the condition of a window in the room in which the boy's crib was located and in which he was allowed to play with the other inmates.

That room was on the ground floor of Beeman House and was about twenty-five feet long by twelve feet wide. There were beds or cribs in rows on two sides of the room for from eight to twelve children ranging in age up to about nine years. The space or corridor between the rows of beds led to two windows facing an open porch. These windows were about seven feet high and thirty inches wide and each was made of sash which held in place six panes of ordinary window glass in such position that each window had two panes from side to side and three panes from top to bottom. The bottom panes came down to within the width of the window sash, about two inches at the bottom, of the surface of the floor and at the time the plaintiff was hurt there were no guards of any kind on these windows. Until two days before the accident, when an orderly took them off when he cleaned the windows, wooden slats had been fastened across each window to a height of about four feet above the floor in such a position that articles like children's toys could not be thrown against the glass as the superintendent testified and, as he also testified, the slats were low enough and near enough together to protect any children from hitting the glass.

The boy's crib was on the end nearest these windows of one of the two rows and his condition did not confine him to it as he could walk some with the aid of a brace he wore on his injured leg. About half past ten on the morning of February 11, 1939, just after one of the two practical nurses then in attendance had been called to the second floor to help there a bit, and when the other was washing in a bathroom near the room where the children were, the boy was hurt. He was near his crib but not in it and was looking at a picture one of the boys had torn out of a book and given him, when another boy who wanted it began to try to take it away from him. In the struggle which followed he fell head first into the glass in one of the windows mentioned cutting his head, face and one eye so badly that it became necessary later to remove his eye and replace it with a glass one.

▮ It is, of course, the law of New York which is to be given effect in this suit. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That now makes a hospital which is a charitable institution liable for the negligence of its servants or agents at least in so far as such negligence is not in connection with the actual medical treatment given by doctors and nurses who have been selected with reasonable care. Dillon v. Rockaway Beach Hospital & Dispensary, 284 N.Y. 176, 30 N.E.2d 373; Sheehan v. North Country Community Hospital, 273 N.Y. 163, 7 N.E.2d 28, 109 A.L.R. 1197.

▮ In the light of these decisions we think the trial judge was in error in holding that there was no question for the jury on this evidence. It was the duty the defendant owed these plaintiffs to exercise reasonable care to provide quarters safe for the boy to use while he was an inmate and to maintain them in that condition during that time. Gregory v. Memorial Hospital, 239 App.Div. 857, 264 N.Y.S. 974; Lessin v. Board of Education, 247 N.Y. 503, 508, 161 N.E. 160; Collentine v. City of New York, 279 N.Y. 119, 17 N.E.2d 792. See, also, Bloom v. Jewish Board of Guardians, 286 N.Y. 349, 36 N.E.2d 617. And it could not be decided solely as a matter of law that it had performed that duty while leaving the glass in the window unguarded as the evidence showed it was when the little boy fell into it.

Judgment reversed and cause remanded for a new trial.