MARTUCCI et al. v. BROOKLYN CHIL-
DREN'S AID SOC.

No. 205.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1944.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

Charles A. Loreto and Louis Napolitano, both of New York City, for plaintiffs-appellees.

Alfred W. Andrews, of New York City (William L. Shumate, of New York City, of counsel), for defendant-appellant.

CHASE, Circuit Judge.

The plaintiff, Robert Martucci, is an infant who was injured while an inmate of

the defendant's home for crippled children at Far Rockaway, N. Y. The infant, suing by a guardian ad litem who is his father, and the father, who sued in his own right, have recovered a judgment for the damages found by a jury to have been sustained as a result of injuries which the boy received when he fell against and broke a pane of glass in an unguarded window in the room in which he lived. The defendant has appealed.

Jurisdiction, based upon diversity, is clear and unquestioned. This was a retrial of the action following our reversal of a previous judgment directed for the defendant. See, Martucci et al. v. Brooklyn Children's Aid Soc., 2 Cir., 133 F.2d 252.

The sole issue at the retrial was whether the defendant was guilty of actionable negligence in failing to provide safe and suitable quarters for the care of the child, the plaintiffs having abandoned previous allegations that the supervisors were incompetent and the supervision inadequate. It appeared that the child was a crippled boy between four and five years old who could walk only with the aid of a brace on his right leg. He was cared for in a room in a building of the defendant called the Beeman House. That room contained beds or cribs for eight or ten children, which were occupied by inmates. The beds were arranged along two sides of the room, with a sort of aisle between them that led to the outside wall in which were two unguarded French windows about seven feet high and thirty inches wide. Each window contained six panes of glass in a sash which came down close to the level of the floor. While attempting to retain a piece of paper on which was a picture that another boy, also an inmate, was trying to take from him the Martucci boy fell against one of the lowest panes of glass in one of the French windows, striking his head on it with such force that the glass was broken, his face was cut, and one eye was destroyed. The plaintiffs claimed the defendant was negligent in not having the windows suitably guarded, and the jury so found.

The defendant relies for reversal on errors which it insists were committed at the trial. They consist of the exclusion of evidence and what is said to have been a prejudicial attempt by the court to discredit an employee of the defendant who was called as a witness by the plaintiffs.

█ It appeared that for some years and until two days before the accident the windows had been guarded by a number of wooden bars nailed about an inch apart across them from the bottom to a height of about four feet from the floor. These bars were about three quarters of an inch thick and two inches wide. They interfered with the cleaning of the windows, had been removed by one of defendant's employees for that reason, and had not been replaced before the Martucci boy was hurt. Presumably to overcome any inference that the previous use of bars was an admission that the windows unguarded were dangerous in a children's ward like this one, the defendant sought to show when they had been originally placed on the windows and that they had then been put there to protect the glass from being damaged by toys and the like thrown against it rather than to protect the children themselves from harm. This evidence was admissible to explain the former use of the bars on a basis other than that of an admission by conduct that due care for the safety of the children required the guarding of the windows. The defendant's intent in erecting the protective device was squarely in issue. Compare, Chamberlain v. Iba, 181 N.Y. 486, 492, 74 N.E. 481; Ferris v. Sterling, 214 N.Y. 249, 254, 108 N.E. 406, Ann.Cas. 1916D, 1161; D'Ambra v. Rhinelander, 234 N.Y. 289, 294, 137 N.E. 333; Norris v. Lee, 136 App.Div. 685, 687, 121 N.Y.S. 512.

█ It was permissible to show also that the window had previously been left unguarded while the room was in similar use and that no harm to inmates had resulted during that time on the theory that the result of such an actual test is some evidence of whether conditions claimed to be dangerous are in fact of that character. See De Salvo v. Stanley-Mark-Strand Corp., 281 N.Y. 333, 338, 23 N.E.2d 457; Fay v. McNamara, 262 App.Div. 875, 28 N.Y.S.2d 530; District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618.

█ Moreover, the conditions under which the room was used in the care of the children were to be considered on the question of negligence in connection with the physical condition of the windows. Yet the defendant was not allowed to show the kind of supervision given the plaintiff and the other inmates who shared the

room with him. It cannot be said as a matter of law that the use of bars or the like was the only way in which a prudent person in the position of the defendant would, or could, have made the room safe for the inmates. Supervision adequate to keep them so far from the windows that they would not fall against them might have been found by the jury sufficient to make the room safe even with unguarded windows like these. Only the likelihood that an inmate would fall into one of the windows made them a source of danger, and to the extent that this likelihood was removed the danger would be lessened or removed with it. Its removal by the use of bars or by adequate restraint of the children through supervision might well have been found by the jury to be alternatives between which a prudent person might choose.

■ This accident happened when two nurses, usually present, were temporarily out of the room. One had been called to the next floor in an emergency and the other who was busy near by had not yet gone back into the room. That it did happen shows that in this instance the supervision was inadequate to prevent it. But that is not the sole test of the defendant's negligence. It was not an insurer but only liable for injuries to the children resulting from its failure to exercise due care. The kind of supervision which they were given did not become an immaterial matter, as the judge evidently supposed it did, simply because the plaintiffs did not allege any negligence of the defendant in that respect as an independent basis of recovery. It was a circumstance incapable of being divorced from the ground of negligence relied on for recovery and was, indeed, of such importance that proof of it might have changed the result had the supervision been found commensurate with the dictates of prudence under all the circumstances. In determining whether an act or omission is negligent all the surrounding circumstances are relevant. Rasmussen v. Palmer, 2 Cir., 134 F.2d 780, 783.

■ The last objection raised by the defendant relates to the trial judge's examination of a witness called by the plaintiff. As such a thing is not likely to occur at any subsequent trial and there must be a reversal for another reason we shall touch upon it more briefly than would otherwise be necessary. The witness was an orderly employed by the defendant, and in a written statement taken before the trial he had said that on the day of the accident he was mopping floors in an adjoining room and the children "were playing and talking as youngsters do." On cross examination at the trial he testified that he heard the children talking, but at no time did he deny having seen them playing. When counsel had concluded their examination of the witness, the court began asking him questions; and in an argumentative manner suggesting the expected answer, he asked if it was not true that the witness had testified that none of the children were playing. It is quite possible that the judge had in mind a portion of the witness's testimony in which he had said the children were not playing at games requiring physical activity, such as tag or leap frog. Actually his testimony and his written statement were not inconsistent and when by his close questioning the judge obtained from the witness an admission that he had contradicted himself—which the record does not show—he was indulging in a form of questioning which was as improper when conducted by the court as it certainly would have been if counsel had been the questioner. Bolte v. Third Avenue Railroad Co., 38 App.Div. 234, 56 N.Y.S. 1038. It served to discredit the witness in the eyes of the jury and was prejudicial to the defendant whose employee he was though the defendant had not vouched for his credibility by calling him as a witness.

■ It is very clear that the trial judge has the right, and at times the duty, to examine witnesses who are testifying when it appears that the course of justice requires his assistance in eliciting the material evidence, Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 583; and the necessity of his doing so is a matter resting in his own sound discretion. United States v. Kay, 2 Cir., 101 F.2d 270, 272. But he passes the bounds of duty and of propriety when he takes the examination out of the hands of counsel conducting it in lawyer-like fashion and asks improper questions. Such action is an abuse of discretion. Williams v. United States, 9 Cir., 93 F.2d 685, 688.

Judgment reversed, cause remanded.