WILLIAM L. BLACK, Respondent, v. METROPOLI-
TAN STREET RAILWAY COMPANY, Appel-
lant.

**Kansas City Court of Appeals, January 22, 1912.**

1. **NEGLIGENCE: Street Railways.** Plaintiff sued for damages
for injuries caused by a shock of electricity which he received
when he boarded an electric street car and stepped on the metal
cover of a sand box in the floor of the vestibule of the car, and
also on the door plate. *Held*, that it was for the jury to say
whether or not he was injured by an electric shock, as he
claimed.

2. ————: ————: **Pleading.** Where the relation of passenger
and carrier exists, a general allegation of negligence is per-
missible upon the theory that the instrumentalities are in the
hands of the defendant, and he knows the condition thereof.

3. ————: ————: **Evidence.** Testimony of experts of instances
where persons had received shocks similar to the one plaintiff
received and were not injured, is inadmissible.

Appeal from Jackson Circuit Court.—*Hon. W. O.
Thomas,* Judge.

AFFIRMED.

*John H. Lucas* and *H. H. McCluer* for appellant.

(1) The court erred in overruling appellant's mo-
tion to make the petition more definite and certain.
Orcutt v. Bldg. Co., 201 Mo. 424; Roscoe v. Railroad,
202 Mo. 587; Keller v. Railroad, 140 Pa. St. 65; Le-
Barron v. Ferry Co., 11 Allen (Mass.), 312; Farley
v. Traction Co., 132 Pa. St. 58; Hayman v. Railroad,
118 Pa. St. 508; Fearn v. Ferry Co., 143 Pa. St. 122.
(2) The respondent was not entitled to recover on the
doctrine of *res ipsa loquitur* in this case. (3) The ap-
pellant's instruction in the name of a demurrer to
the evidence should have been given. (4) The court
erred in rejecting the following evidence offered on

behalf of the appellant. The evidence offered as to the effect of electric shocks on persons who had received the same, which evidence so offered is shown on the following pages of the printed abstract of the record, viz.: Abst., pp. 219 to 222; 222 and 223; 224, 225 and 226; 227 to 234; 238 to 244; 284 and 285, 286. 1 Wigmore on Evidence (1904), page 521, secs. 441, 445, 448; Rex v. Webb, 1 Moore & Robinson, 405, 412; Rex v. Soloman, Pelhams Chronicles of Crime, 11, 417; Epps v. State, 1 N. E. (Ind.), 491; Champ v. Commonwealth, 59 Ky. 26; Rieve v. Denneth, 11 N. E. (Mass.), 983; Knowles v. State, 80 Ala. 9; Brantley v. State, 8 So. (Ala.), 816.

*Boyle & Howell* and *Joseph S. Brooks* for respondent.

(1) The court did not err in overruling appellant's motion to make the petition more definite and certain. Orcutt v. Bldg. Co., 214 Mo. l. c. 51; McRae v. Railroad, 125 Mo. App. 562; Black v. Railroad, 217 Mo. 685; McGrath v. Railroad, 197 Mo. 105; Ewing v. Vernon Co., 216 Mo. 681; Anderson v. Railroad, 129 Mo. App. 384; Roberts v. Neal, 134 Mo. App. 612; White v. Railroad, 202 Mo. 539. (a) By answering to the amended petition the defendant waives motion Mo. 685; McGrath v. Railroad, 197 Mo. 105; Ewing v. Vernon Co., supra. (b) Answering over after motions amounts to a waiver except where claim is that petition states no cause of action. Roberts v. Neal, 134 Mo. App. 612. (c) By answering, after motion to make definite and specific has been overruled, defendant waives the motion. Ewing v. Vernon Co., supra. (2) The doctrine of *res ipsa loquitur* applies. McRae v. Railroad, 125 Mo. App. 562; Black v. Railroad, 217 Mo. 685; Roscoe v. Railroad, 202 Mo. 587; Price v. Railroad, 220 Mo. 435; Loftus v. Railroad, 220 Mo. 470. (3) Appellant's instruction "in the

name'' of a demurrer to the evidence should not have
been given, and the trial court committed no error in
refusing to give it.   McRae v. Railroad, 125 Mo. App.
562; Black v. Railroad, 217 Mo. 685; Orcutt v. Bldg.
Co., 201 Mo. 424; Kirkpatrick v. Railroad, 211 Mo.
68; Beave v. Transit Co., 212 Mo. 352; Hite v. Rail-
road, 130 Mo. 132.   (4) The court did not err in re-
jecting evidence on behalf of appellant, as claimed in
point 4 of appellant's brief.   Calcaterra v. Iovaldi, 123
Mo. App. 351; 1 Wigmore, secs. 33, 443; May v. Brown,
3 B. & C. 113, 127; Railroad v. Mugg, 132 Ind. —;
Railroad v. Champion, 32 N. E. 874; Hunt v. Gas Light
Co., 8 Atl. 169.   (5) The court did not err in giving
instructions 1-P and 2-P or either of them.   Price
v. Railroad, 220 Mo. 435; Loftus v. Railroad, 220 Mo.
476; Devoy v. Transit Co., 192 Mo. 197; Lemon v.
Chanslor, 68 Mo. 356; Condy v. Railroad, 85 Mo. 85;
Clark v. Railroad, 127 Mo. 208.   (6) The court did
not err in overruling appellant's motion for a new
trial or its motion in arrest of judgment.

BROADDUS, P. J.—This is an action for dam-
ages for injuries the plaintiff alleges he sustained by
reason of the negligence of the defendant.   There
had been a former trial of the cause wherein the plain-
tiff recovered judgment and from which the defend-
ant appealed to the Supreme Court.   The Supreme
Court reversed the judgment and remanded the cause
for a new trial.   [See Black v. Met. St. Ry. Co., 217
Mo. 672.]   After the cause was reversed and remanded
the plaintiff amended his petition and on trial anew
again recovered judgment from which the defendant
appealed to this court.

The allegations of the amended petition are to the
effect that while plaintiff was a passenger on defend-
ant's street car, and at or near the intersection of
East Nineteenth street with Main street in Kansas
City, Missouri, "on account of the negligence of the

defendant.he received an electric shock and was thereby injured as follows: He was severely injured in his entire nervous system and particularly about his brain. That on account thereof he has suffered a partial paralysis of his legs, back, hands and arms. That his bowels have become partially paralyzed and injured in such a manner that the functions thereof have been seriously interfered with. That his bladder has been affected in such a manner that he has since been unable to control that organ. That his circulatory system has been permanently impaired and the action of the heart seriously affected. His eyesight, hearing and sexual powers have become impaired and the functions and powers of his mind and memory weakened."
To this amended petition defendant filed a motion to require the plaintiff to make it more definite and to state particulars. That is to say, "that the plaintiff be required to state fully in what manner, if any, he received the electric shock . . . and that he be required to state what constitutes the negligence of defendant . . . on account of which he alleges he received said electric shock, so that defendant may be informed as to such matters," etc. Upon the hearing of the motion defendant introduced as evidence the original petition in the case. The court overruled the motion. The defendant excepted to the action of the court thereon.

The respondent has failed to file any paper that might be called a statement of the case as the rules of practice require. The statement of appellant, while quite brief, we presume is a true statement as it is not contradicted by respondent. It is as follows: "The respondent introduced testimony tending to show that on January 18th, 1905, about one o'clock in the afternoon he boarded one of defendant's electric street cars at Nineteenth and Main streets, intending to go east on Nineteenth; that just as he got on and before he had gotten inside of the car it started up; and, that in get-

ting in the vestibule of the car he stepped with one foot on the sand box cover, which is a little metal cover that fits over the top of the sand box, and which is level with and forms a part of the floor. Whether at that time his right hand was hold of the handrail or the frame of the door is from the evidence hard to determine. He appears to fix his other foot at that time as being on the floor of the vestibule. At the time he stepped on the sand box cover he says that he received an electric shock that caused his foot to stick to the sand cover so that he had to take his hand and pull it away. After he had removed his foot from the sand box cover and started into the body of the car he says he stepped with one foot on the door-plate of the car, and at that time received another electric shock. Respondent also introduced evidence tending to show that an electric shock might have caused the injury of which he complains.

"Appellant contends that respondent could not have received an electric shock in the manner that he claims to have done, and that whether he did or did not, that no electric shock that he could have received at that time could have caused his injuries.

"Respondent's trouble is designated by his witnesses as traumatic neurasthenia and whether or not that could have been produced by an electric shock such as he claims to have received is one of the contested questions.

"During the progress of the trial the appellant offered to introduce much evidence on the above question in the form of experiences, that is offered to show that electric shocks such as respondent claims to have received (although not from the same cause) are of frequent occurrence; and, that the persons receiving them suffer no such trouble as claimed in this case. Such evidence was rejected by the court."

In order, however, to obtain a full understanding of the case it is necessary to examine more particular-

ly some of the evidence. In describing the manner in which plaintiff received the injury he stated that when the car stopped for him to get on, as follows: "I started to get on and as I took ahold of the car they started the car and that put my foot on the step and that brought my left foot around on the platform. I had ahold of the handrailing or door post, or whatever it was there, and that brought my left foot down in this sand cover." The sand cover was composed of metal. He was then asked: "When your foot got on that sand box cover what happened?" A. "There was a sensation as though driving nails right into my flesh, all through my whole body, and that brought me perfectly, you might say, stiff. I was kind of dazed for a few minutes or seconds, or something of that sort, and when I went to make a move my left foot was fastened to the plate, and I had to use my hands in order to pry my leg or foot loose from this sand cover." Q. "Now at the time or right after that or while you were going in the car did either of your feet touch the metallic door plate?" A. "Not right at that time. I got loose from the sand cover. After I got loose from that then I went to the door and then I came in contact with the door plate." He stated that he did not have his other foot on the metallic cover at that time.

Expert witnesses of defendant testified that in their opinion under the conditions the plaintiff could not have received the electric shock of which he complains. In order to get a proper understanding of appellant's contention that the court erred in rejecting the testimony of experts offered by it for the purpose of showing that if plaintiff was injured at all by an electric shock, it could not have had the effect upon him that he claims it did, it is necessary to state some of that proposed. Dr. Iuen had wide experience and had treated many cases where the patients had received electric shocks. He was asked: "I will ask you, doc-

tor, during all of these times that you have treated these cases of electric shocks and electric burns whether you have ever had a case in which any person received any permanent injury to the nervous system?" Upon objection of plaintiff the question was held to be incompetent. Then he was asked: "Doctor, in your opinion, state whether a person receiving an electric shock, no matter how severe, if it does not kill them, if they have any after effects to their nervous system?" A. "How is that?" Q. "If the shock doesn't kill them, no matter how severe it may be, if they have any after effects to their nervous system or to their nerves?" A. "I have never seen any nervous complications arise."

The original petition on which the cause was tried and which was appealed to the Supreme Court alleged specific acts of negligence as the cause of plaintiff's injury. The judgment was reversed upon the ground that the plaintiff had failed to prove the acts of negligence alleged and that the instructions based upon his right to recover should not have been given.

It is urged by appellant that the court committed error in overruling appellant's motion to require respondent to make his petition more definite and certain. In support of this contention we are cited to Orcutt v. Century Building Co., 201 Mo. 428; Roscoe v. Met. St. Ry. Co., 202 Mo. 587, and decisions from other states. These cases state the rule that, "A general allegation of negligence is all that is required in cases of accident, where the relation of passenger and carrier exists. This general allegation of negligence is permitted upon the theory that that instrumentalities are in the hands of the defendant and he knows the conditions thereof, whereas plaintiff does not or may not know them." It is further said: "But, if the plaintiff by his petition is shown to be sufficiently advised of the exact negligent acts causing, or contributing to, his injury, as to plead them specifically, as in

this case, then the reason or the doctrine of presumptive negligence has vanished.   In other words, the burden of proof is upon plaintiff as it would be in any other kind of a case.'' [Roscoe v. Ry. Co., supra, l. c. 587.]

It is not to be denied that the plaintiff being a passenger on defendant's car, if he was injured while he was such a passenger, had his cause of action against the carrier for such injury, and that he was not required to allege a specific act of negligence upon the part of such carrier, but might recover on a charge of general negligence.   And it cannot be denied that the amended petition only contains a general charge of negligence.   But we presume that the appellant's point of view is, that as the plaintiff had tried his case and testified as to the manner in which he was injured and had so stated in his original petition that he is compelled under the rule stated to charge the acts of negligence specifically.   The language of the decision does not authorize any such construction.   As the Supreme Court had decided that he had not proved the specific acts of negligence charged although plaintiff detailed the manner in which he was injured, his counsel thought best to amend the petition, so that he might recover on the theory of *res ipsa loquitur* by proving the injury and casting the burden upon appellant to explain the accident.   Plaintiff is not precluded under the code from making the amendment, as his cause of action is not thereby changed.   How can it be said that plaintiff could not recover on his evidence, because he could not have been injured by an electric shock in the manner he says he was?   All plaintiff had to prove was that he was injured by an electric shock.   The manner in which it was communicated to him was immaterial. If the manner in which he says he received the shock was improbable and beyond all dispute could not have so happened, still, if notwith-

standing it was true as a matter of fact that he did receive such shock he would still be entitled to recover on the allegation of general negligence. The ultimate fact to be shown was his injury, which was a fact for the jury, if that was shown, he made out his case. The presumption of negligence followed. [Price v. Met. St. Ry. Co., 220 Mo. l. c. 444; McRae v. Met. St. Ry. Co., 125 Mo. App. 562.]

It is urged that defendant had the right to show by experts that in all their experiences they had never known of one instance where a person had received an electric shock that did not prove fatal, that left any after effects on the nervous system, and that the court committed error in refusing to admit such evidence. Mr. Wigmore discusses the question at length and he sums up his conclusion as follows: "Suppose that the proponent in the issue is offering only to show a capacity, i. e., an occasional possibility—of producing the effect. Obviously, it is here logically of no avail to produce against him instances in which the effect was not produced. They do not meet his point; for it is quite consistent with the capacity or possibility of producing the effect that there should be many instances in which the effect would not be produced; for instance, if the proponent has evidenced by one or two instances the capacity of a pistol to carry two hundred yards, it is logically of no avail for the opponent to answer with a negative instance (or instances) in which it has not carried thus far. Logically nothing short of a universal negative will suffice." However, he states, "That assuming the proponent's witnesses are not to be believed, and, therefore, that there is no affirmative instance of the alleged capacity in the field, even a single negative instance may suffice to show the non-capacity or impossibility on one condition, namely, that it is made equivalent to a universal negative. . . .   For example, one instance of a pistol's not carrying 200

yards is simply a negative instance showing that it does not always carry that distance; but if we show that the greatest possible charge of power was put in, the smallest possible bullet was used, and the most skillful marksman possible aimed it, and still it did not carry 200 yards, we have gone far to show that it is utterly incapable of carrying that distance, i. e., to prove a universal negative from a single instance.'' [Wigmore on Evidence, vol. 1, section 448.]

Applying the rule as thus stated which we believe to be the law, it does not sustain the defendant's theory. The fact is established by the verdict of the jury that the conditions did create the shock, which if true, cannot be successfully disproved by any number of instances in which no such results followed. If the capacity existed for giving the shock to plaintiff, a thousand instances where it did not produce such an effect would prove nothing. But from the very nature of things, it is competent to show affirmatively by instances, capacity. For example, it was held that it was admissible to establish the intoxicating effects of a beverage sold by defendant to prove that it had that effect upon the witnesses who drank it. [Knowles v. State, 80 Ala. 9; State of Kansas v. Adams, 44 Kans. 135.] For the purpose of showing deceased did not commit suicide by shooting himself with a pistol as alleged by the insurance company, it was competent to prove by experiments made in discharging the same revolver loaded with similar cartridges, etc., that the object fired at was found to be singed by powder. [Beckett v. North-Eastern Ass'n, 69 N. W. 923.] "In an action for the price of a lot of frozen fish, the defendant contended that they were worthless, and had been thawed and frozen several times while in the plaintiff's possession, and put in evidence of the state of the thermometer during this time. Held, that the plaintiff might in rebuttal put in evidence that other fish of a similar description stored in the same

place for the same time did not thaw, and were taken out afterwards in good condition." The court justifies the holding on the ground that: "The plaintiff in chief had offered nothing as to the particular condition of the fish, nor the temperature in which they had been kept." [Hodgkins v. Chappell, 128 Mass. 197.] Such evidence, as we have seen, is competent to prove an affirmative. Where the question was whether a certain object on the highway side was calculated to freighten horses, evidence that it had frightened other horses than those involved in the case is admissible. [Golden Ry., 84 Mo. App. 59.] But it would be absurd to say that it was competent to prove that other horses were not scared by the same object. And such on principle is the holding in Campbell v. Ry. Co., 121 Mo. 348.

We believe the case was properly tried and that there was sufficient evidence to sustain the verdict. Affirmed. All concur.