ISABEL DEWEY, RESPONDENT, v. KLINE'S, INC., APPELLANT.—86 S. W. (2d) 622.

Kansas City Court of Appeals.   October 7, 1935.

*Charles S. Walden, Paul S. Conwell* and *Frank D. Rader* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts, I. M. Lee* and *Wright Conrad* for appellant.

TRIMBLE, J.—The defendant, "Kline's, Incorporated," maintains a department store at 1112 Walnut Street in Kansas City, Missouri. Plaintiff, nearly if not quite seventy-two years of age, brought this action to recover damages for personal injuries sustained in a fall she received while attempting to enter the toilet room used in connection with the rest room on the fifth floor of said store. Her fall and injuries occurred November 24, 1930. She sued for $3000 and recovered a verdict and judgment for $1150. Defendant appealed.

Since there is an apparent difference of opinion between the parties as to the construction to be placed on the allegations of negligence charged, we state them in a somewhat compact form, according to their legal effect.

The petition (after stating the maintenance of the department store for the sale at retail of various kinds of merchandise, to which it invited the public generally to enter its five-story building and use the conveniences and building provided therefor), alleged that plaintiff, for the purpose of selecting and purchasing certain articles of merchandise, entered said store and, about nine o'clock A. M., went into said rest room and attempted to enter the said toilet room, but owing to defendant's negligence, as hereinafter specifically set forth, she was caused to fall with great force and violence upon the tile floor and against the radiator, located in said toilet room, greatly injuring and bruising her as herein later stated.

The petition then alleged it was defendant's duty to use ordinary care to provide and maintain, in a reasonably safe condition, said toilet room and entrance thereto, which defendant had provided for the use of its customers, but that it carelessly and negligently failed to do so, in this, to-wit:

"That the tiled floor to said toilet room was so constructed that the same was a distance of four or five inches higher than the level of the floor of its rest room and the outer edge thereof being directly in contact with or against the said doorway by means of which its patrons entered said toilet room; that said door was a solid door and was so constructed that when closed the lower portion thereof was immediately against the raised portion of the floor of said toilet room and concealed the same from the view of persons entering therein; that said door swung outward into said rest room and persons opening the same for the purpose of entering said toilet room were likely to stumble over said raised portion of said floor and to be greatly injured thereby, all of which facts were known to the defendant, its officers and employees, or could have been known to them by the exercise of ordinary care on their part; that on said date the defendant carelessly and negligently failed and neglected to keep and maintain sufficient lights in said rest room to disclose

the fact that the floor of said toilet room was at a higher elevation than that of said rest room; that said defendant carelessly and negligently failed to keep the door to the said toilet room open so that the presence of said elevation in said floor could be discerned by patrons intending to enter therein; that said defendant carelessly and negligently failed to warn plaintiff by signs or by any other means of the difference in elevation of said floors in the rest room and toilet room, or to take any steps to warn plaintiff of said condition of said floors; that said defendant carelessly and negligently kept and maintained a subdued light in said rest room so that in opening said door to said toilet room plaintiff or other patrons entering therein were likely and reasonably certain not to observe the differences in elevation in said floors, and were likely to stumble over said elevated portion of said floor and be greatly injured thereby, all of which facts were known to the defendant, its officers and employees, or could have been known to it by the exercise of ordinary care on their part, but nevertheless, said defendant carelessly and negligently failed and neglected to render said entrance to said toilet room reasonably safe and to warn plaintiff of said condition as aforesaid; that upon said date plaintiff attempted to enter said toilet room and, owing to the carelessness and negligence of the defendant in said respects and each of them, and as the direct and proximate cause thereof, she failed to observe the difference in elevation of said floors and was caused thereby to fall on and upon the tiled floor of said toilet room and against the radiator located therein, injuring and damaging her in the following respects, to-wit:

"That she fell with great force and violence upon the tiled floor, striking the right side of her head against the said radiator, bruising and contusing the same and resulting in a concussion of the brain; that by reason of the same she has suffered and will continue to suffer for a long time in the future severe and constant headaches, and her eyes were greatly injured and damaged, causing a lessening of vision and great pain and suffering therefrom; that the nerves, ligaments and muscles of her right side were wrenched, torn, contused and bruised, and same were torn from the ribs upon said right side, the spine, muscles, ligaments and nerves of her back were injured, bruised and contused, the ligaments, nerves and muscles in the pelvic region were lacerated and contused thereby causing a separation of the sacroiliac; that as a result of said fall she received a severe and permanent shock to her entire nerves and nervous system, which has left her in a highly nervous state; that by reason of her said injuries she suffered and will continue to suffer great pain and mental anguish; that she has been unable to sleep or to receive her normal rest; that she was confined to her bed for a period of several months; that her said injuries are permanent in their na-

ture and she has been unable to perform her usual household duties or to do any work of any kind without causing constant suffering from her said injuries and will be unable to do so for a long time in the future.''

Defendant's answer, after a general denial, pleaded contributory negligence in this:

''That plaintiff failed to exercise ordinary care to look out for her own safety, and failed to look at and observe the surface of the floors over which she was walking and in attempting to walk and pass through the door leading from the rest room into the toilet without exercising ordinary care and caution to see and observe that the floor of the toilet room was a few inches higher than the floor of the rest room, and that she failed to exercise ordinary care, watchfulness and attention for her own safety while walking and moving about on the floors of the defendant's store and while approaching and passing through the said door leading from the rest room into the toilet room; that the foregoing negligent and careless acts and omissions of the plaintiff directly and proximately caused and contributed to cause and bring about any injuries which plaintiff may have sustained at the time and place alleged in plaintiff's petition.''

The reply was a general denial.

The evidence in plaintiff's behalf tended to show:

That on the day of the injury, ''a little after nine o'clock,'' plaintiff went into Kline's Store, to buy her Christmas presents. She first went to the elevator and ''inquired for the rest room as it was my first visit there.'' The rest room was on the fifth floor, facing east on Walnut Street. Plaintiff testified that as she entered the rest room she ''passed through two sets of curtains, heavy curtains; first a heavy curtain and then a little passageway and then another set of heavy curtains; and then I entered into—at least that is the way it affected me, as though I was passing through a lot of heavy curtains. I entered this room, dimly lighted, without any windows in it, my first visit, and walked straight through to go to the toilet. I opened the door and as I opened the door I was just paralyzed with this light. There was so much light it blinded me. As I came out of this dark room I opened this door and here was all these lights and as I started to enter I tripped and was pitched full length across that awful floor, hitting my head on the radiator.''

She said the store room was ''brightly lighted'' but the rest room was dark as compared to the store room. It was ''dimly lighted.'' No lights were in the rest room. Plaintiff said ''it wasn't light, but I could see the door (to the toilet) at the end of the room and I went in.''

Plaintiff said she didn't know there was any difference between the elevation of the floor in the toilet and of the floor in the rest

room. Nothing was there to show there was any difference. She did not notice that the floor of the toilet room was higher than that of the rest room. "I was looking for the knob of the door to get in." . . . "Then as I started to go in, not knowing there was a rise, I tripped and was pitched clear across there." She struck on her right side. She says she was dazed. She doesn't know whether she lost consciousness or not, "but I was so dazed I don't know how I got out." When she came to herself she was lying on a divan in the rest room. She says an official of the company came to her as she was lying there; that he opened the door into the toilet room and she then saw there was a step as he stepped into the toilet room to investigate where she had fallen.

On cross-examination, she testified that she entered the rest room from the west end, and went straight east to the extreme east end, about thirty feet to the toilet room door. She opened the toilet room door and pulled it toward her, taking hold of the doorknob and pulling it around to the side, and the moment she opened the door the light from the toilet room threw a glare of light upon her, and she started right in and as she did she tripped and was pitched headlong. She was looking straight ahead. She says she saw afterward that the bottom of the door came to the top edge of the floor. She went back to the rest room sometime afterwards to see how many people would trip, "but the door has never been closed since." She said she wore bifocal glasses. She looked straight ahead to see the door and the doorknob, and did not glance down to the floor. She had worn bifocals for a good many years. She weighed about 172 pounds at the time.

There was other testimony (notably, that of the maid in charge of the rest room) to the effect that the floor of the toilet room was higher than that of the rest room, and the door that hung between the two rooms went down to the floor of the rest room; and with the door closed, one could not see the difference in the elevation of the two floors. The light in the rest room was "very subdued; they were very soft lights." There was no sign or warning of any kind attached to the door leading into the toilet room, on the morning of plaintiff's fall.

The maid also testified, in plaintiff's behalf, that she had seen others trip or fall going into the wash room. (Defendant objected to this, but was overruled and saved exceptions.) She had seen this occur "very often" and had seen persons "fall down upon the floor" prior to the day plaintiff fell. The maid testified that she was behind the door and when plaintiff came in (evidently into the rest room) she, plaintiff, "opened the door to step into the wash room, and I heard a noise like she stumbled against the step and then I looked up and she was pitching forward. . . . She fell the full length of the wash room." She, the maid, says she picked

plaintiff up as best she could, took her out in the rest room and put her on the divan, and then went upstairs and reported it to Superintendent Arnold, who went down to the rest room. Witness testified she had had occasion to report the fact that people were tripping over this step. (This was also objected to and when it was overruled, defendant saved exceptions.)

The defendant makes the point that the court erred in refusing the defendant's peremptory instruction to find in his favor.

We are unable to sustain this point. The danger was not apparent as long as the door was closed. It was not an *open* elevator shaft or danger observable in the floor. There was nothing to afford a warning to plaintiff that the floor was elevated and nothing to show any danger as in a case of an opening into which plaintiff might fall. Owing to the dimly lighted room from which she stepped and the bright light falling upon this old lady, as she opened the door, she could not see the difference between the elevation of the floors in the two rooms. The unseen danger would arise the moment she started to thrust her foot inside the doorway. The warning defendant once saw fit to hang at the door prior to the morning of plaintiff's accident, had been removed. So far as plaintiff had a right to look for, she was going from one room to another on a level. When she opened the door the change in the elevation of the floors was not noticeable. The circumstances of the case are greatly different from that in Cox v. Bondurant, 220 Mo. App. 948, 954. The facts are also wholly unlike those in Main v. Lehman, 294 Mo. 579. The same is true of the case of Mullen v. Sensenbrennan Merc. Co., 260 S. W. 982, and also of Cluett v. Union Electric Light, etc., Co., 220 S. W. 865. In all of the above cases, there was either something the respective plaintiffs knew of, or of which they could have been aware, if they had exercised ordinary care. The questions of defendant's negligence and of plaintiff's alleged contributory negligence were for the jury. The case, in its circumstances, is more like Mick v. John R. Thompson Co., 77 S. W. (2d) 470; Essenpresis v. Elliott's Department Store Co., 37 S. W. (2d) 458; State ex rel. v. Haid, 51 S. W. (2d) 1015, quashing writ of certiorari in last preceding case. See also, on the question of plaintiff not being charged with contributory negligence as a matter of law: Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 415; Oakley v. Richards, 275 Mo. 266; Gilliland v. Bondurant, 322 Mo. 881, 887.

It seems that the foregoing authorities, at least some, if not all of them, justify the holding that the issue of plaintiff's contributory negligence was properly left to the jury. [English v. Sahlender, 47 S. W. (2d) 150, 154; Kennady v. Phillips, 5 S. W. (2d) 33, 39; Nephler v. Woodward, 200 Mo. 179, 199.]

Likewise, there was sufficient evidence from which the jury could find that defendant was properly chargeable with negligence, and the above and foregoing shows that we are wholly without authority to hold that, as a matter of law, plaintiff's negligence contributed to her own injury.

It is charged that reversible error was committed in giving plaintiff's Instruction 1. This contention is largely a repetition, in another form, of the points heretofore discussed. We have, we think, answered these as heretofore stated. But the contention is further made that the instruction submitted negligence in certain respects *in addition* to the difference in the construction of the floor levels, and the keeping of said rest room sufficiently lighted, which were not supported by the evidence, namely, the failure to post a sign or give a warning of a difference in the elevation of the two floors. The instruction is long, and we have carefully gone over it and find it unobjectionable in the matters indicated. It is no doubt true that if an instruction submits any one or several theories of negligence, any of which were unsupported by the evidence, such is erroneous. [Cervillo v. Manhattan Oil Co., 49 S. W. (2d) 183, 188, 226 Mo. App. 1090, 1115.] We fail to see wherein the instruction was confusing; nor can it be successfully maintained that any one of the issues of negligence was not justified by the evidence.

Likewise, there was no error in refusing to give defendant's withdrawal instructions. The giving of a withdrawal instruction is discretionary in many instances, and it would have been error to give the ones asked in this case.

It is urged that the court erred in admitting evidence of the maid that she had seen persons stumble and fall in going into the toilet room and that she had reported such occurrences. In Gable v. Kansas City, 148 Mo. 470, this was held to be erroneous. This ruling was followed in Smart v. Kansas City, 91 Mo. App. 586; Edwards v. Barber Asphalt Paving Co., 92 Mo. App. 221. But in Charlton v. St. Louis & San Francisco R. R. Co., 200 Mo. 413, 442, the Supreme Court held to the contrary, and in Heberheimer v. City of St. Louis, 269 Mo. 92, 102, 103, adhered to the later view and expressly overruled the Gable case. No evidence of other injuries was introduced. No error was committed in the regard indicated.

No reversible error was committed by the court in permitting the evidence adduced in examining defendant's superintendent, Arnold, relative to the leaving of the toilet room door open after the fall of plaintiff occurred. In the first place, Mr. Arnold merely said that the door was allowed to be closed or to stand open at the present time and was allowed to be at that time, and that, when left open, it was just for the convenience of the customers. No reversible error was shown. [Logan v. Field, 192 Mo. 54, 68; Kuenzel v. City of St

Louis, 212 S. W. 876; Gately v. St. Louis-San Francisco Ry. Co., 56 S. W. (2d) 54.]

The court did not commit reversible error in refusing to allow an expert architect to testify as to the common practice, and the reason for the construction of the floor of the toilet room above the level of the floor of the room adjoining and entering the toilet room door. What was the "common practice" in constructing such places would not throw any light upon what were the conditions with which plaintiff was surrounded in the instant case. And if ordinary care was not used to have the place reasonably safe, whether others did or did not so construct their places, was not relevant. [State ex rel. v. Haid, 51 S. W. (2d) 1015, 1018.]

Finally, it is urged that the verdict is excessive.

Plaintiff was close to seventy-two years of age. She received a severe fall. Her side and back were sprained. Fortunately no bones were broken. Her doctor testified plaintiff was confined to her bed. She was suffering much pain. She could not get up alone nor could she get down without help. Plaintiff's side and back were sprained. Her body showed no outward bruises or discoloration, but the doctor said "people often sprain their backs and you will not see any discoloration." The doctor also said that when the patient was first seen, she observed great difficulty in the movement of her body. She was treated at her home for six days and her condition gradually grew better; that any kind of a sprain takes time to recover. "As a rule, it takes a long time." "That often there was quite a long time afterward." After about a week she was able to go to the doctor's office and be treated there. The doctor did not depend entirely upon what the patient said. It could be felt that the muscles were contracted and the doctor knew they were very sore. In the case of Gabriel v. Metropolitan Street Ry., 164 Mo. App. 56, one of the cases cited by defendant in support of the contention that the verdict is excessive, the amount recovered is not stated, but it was held that the verdict was excessive by $500. By taking the trouble to go to the roll records we found that the jury's verdict in that case was $1250. Her injury was caused by a fall because of the starting of the street car before plaintiff reached her seat. The plaintiff in that case was sixty-five years of age, while plaintiff, in the case at bar, was nearly seventy-two. We have gone over the cases cited by defendant holding the verdict to be excessive, but find the circumstances in each case are so different as not to justify us in reducing the judgment in this case. Hence the point is disallowed; and finding no reversible error in the case, the judgment is affirmed. All concur.