Marvel **SCHILLIE**, Administratrix of the Estate of Marion Schillie, Deceased, Appellant,

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY**, a Corporation, Appellee.

No. 15135.

United States Court of Appeals Eighth Circuit.

April 20, 1955.

Rehearing Denied June 17, 1955.

Ernest Hubbell, Kansas City, Mo. (Frank X. Mattes, Kansas City, Mo., was with him on the brief), for appellant.

Richmond C. Coburn, St. Louis, Mo. (John H. Lathrop, Sam D. Parker, Kansas City, Mo., and Frank E. Booker, St. Louis, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff, as Administratrix of the Estate of Marion Schillie, brought this action to recover damages for the death of Marion Schillie, her husband, who was killed while working for the defendant Railway Company in the repair of defendant's railroad bridge at Topeka, Kansas. Negligence was charged under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. A jury returned a verdict for the defendant. From the judgment entered pursuant to that verdict this appeal was taken.

Deceased was a member of a steel bridge repair gang. At the time of his death he was engaged in doing riveting work on the bridge at Topeka. That work required the use of a scaffold. The scaffold was suspended from the top longitudinal steel beams of the bridge by ropes. To construct the scaffold ropes were attached to each end of two wooden beams somewhat longer than the width of the bridge. The ropes were then placed over the top longitudinal steel beams of the bridge and the ends of the wooden beams drawn up to the proper height, the wooden beams extending across the bridge at right angles to the rails. Wooden planks were then placed upon these wooden beams, thus forming a platform upon which riveters worked in installing rivets in the upper steel structural members of the bridge.

It was necessary that the scaffold platform be level. To accomplish that it was necessary that one of the workmen climb up a steel member of the bridge to a sufficient height to bring his eye to the height the floor of the scaffold was to be and, by sighting, direct the adjustment of the suspension ropes upward or

downward until the wooden beams which were to support the floor boards of the scaffold were each at the same height from the top of the bridge and transversally level. Deceased was doing that at the time of his death, which occurred in the following manner.

The scaffold now involved was to be suspended at one end of the bridge. Sloping steel members two feet in width rose from the longitudinal steel floor members of the bridge to the top of the superstructure of the bridge on each side at an angle of 53 degrees, connecting at the top with a perpendicular steel member and the longitudinal top member of the superstructure. These two sloping steel beams were called batter posts. On each side of each of these batter posts was a flange extending out three or four inches from the sides of the boxlike steel batter post. A number of rivet heads extended above the otherwise smooth upper surface of the batter posts. As was customary for workmen engaged in this work to do, deceased climbed up one of the sloping batter posts, using the rivet heads as footholds and holding to the flanges on each side by his hands. When he reached the proper height to do the sighting, he leaned to the inside of the batter post to direct the leveling of the wooden beams and fell to the floor of the bridge, receiving injuries resulting in his death.

Plaintiff charged negligence in that defendant negligently (1) failed to equip the batter post with adequate handholds, footholds or steps, or to provide a reasonably safe scaffold from which to work; (2) failed to furnish adequate safety devices to prevent deceased from falling from the batter post, or to catch him in the event he did fall from the post; (3) required deceased to climb the batter post when defendant knew or should have known that in so doing his life would be unnecessarily endangered.

The assignments of error are (1) that the trial court erroneously excluded evidence showing that safety devices consisting of grab-iron steps were placed on the upper sides of the batter posts on one of its steel bridges located at Sibley, Missouri; (2) that evidence to the effect that the batter post without grab-iron steps was not reasonably safe, and that such steps thereon would have made it reasonably safe, was erroneously excluded; (3, 4) that evidence to the effect that a portable adjustable platform on wheels, or a hydraulic hoist platform, or a "hi-way" railway motor car, could have been furnished and would have made the working conditions reasonably safe, and that the use of such devices was practical, was erroneously excluded; (5) that the trial court erroneously admitted evidence that defendant's witnesses, members of the steel bridge crew, had never heard of or known of a man falling from a batter post until deceased fell and that one of those witnesses had never fallen from a batter post; (6) that error was committed in failing to give an instruction requested by plaintiff defining negligence; and (7) that the court erred in not sustaining plaintiff's objection to defendant's argument to the jury to the effect that deceased assumed the risk of falling, and erred in failing to give plaintiff's requested instruction negating the doctrine of assumption of risk.

In determining the propriety of the exclusion of evidence, Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. § 43(a), will be applied. Thereunder

" * * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein

made. The competency of a witness to testify shall be determined in like manner."

The issues of fact which the parties were presenting to the jury for determination are of importance in considering the admissibility of the evidence that defendant's Sibley bridge was equipped with grab-iron steps on the batter posts. Plaintiff was making the assertion, among others, that the failure to put grab-iron steps on the batter posts constituted negligence. Defendant contended it was not negligent and relied upon proof that it was customary not to so equip batter posts to absolve itself from the charge of negligence. To emphasize its position, defendant offered evidence that on no batter posts such as this one had the steps ever been attached. It had attached the steps on the Sibley bridge. Plaintiff endeavored to show that defendant had so equipped its Sibley bridge. The court excluded the evidence upon the grounds that the batter posts on the bridges were dissimilar and that the existence of the grab-iron steps on the Sibley bridge was only evidence of an isolated instance and did not tend to show a custom contrary to defendant's custom. The batter posts on the Sibley bridge were four feet wide instead of two, as on the Topeka bridge. Plaintiff offered evidence that the difference in width did not alter the necessity to have the steps in order to render the batter posts reasonably safe. But this evidence was excluded. Defendant had witnesses who testified that no one had ever been known to fall from a batter post such as those on the Topeka bridge until deceased fell.

Defendant supports the rejection of this evidence on the ground that the receipt or rejection of such evidence is largely discretionary and an abuse of discretion does not appear. The cases cited in support of this argument, notably Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S.W. 396, and Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487, are to the effect that a broad degree of discretion will be allowed the trial court in determining whether sufficient similarity has been shown between the instrumentalities or conditions to justify the receipt of this type of evidence. Those cases do not answer our present question, because the court excluded the evidence offered to show the substantial similarity, for the purposes involved, of the batter posts on the two bridges.

■ On the question of whether this evidence was properly excluded because it tended only to show an isolated instance and not a custom, defendant cites Smith v. Fordyce, 190 Mo. 1, 88 S.W. 679, and Jones v. Kansas City, Ft. S. & M. R. Co., 178 Mo. 528, 77 S.W. 890. Those cases do little more than lay down the general rule that the law does not impose the duty upon an employer to furnish absolutely safe or even the best known appliances but that if he does all that a reasonably prudent master, mindful of the dangerous character of his business, would ordinarily do to protect the lives of his servants, it is sufficient to relieve him of the charge of negligence. Smith v. Fordyce, 190 Mo. 1, 88 S.W. 679, 687. In those and other similar cases the plaintiff proved a custom and practice contrary to the alleged negligent custom or practice of the defendant, upon which evidence the courts held that a jury question was made. The inference sought to be drawn is that only when the plaintiff's evidence amounts to a showing of a custom contrary to the practice followed by the defendant is such evidence admissible. We do not find that to be the proper inference to be drawn from the Missouri authorities. An exhaustive discussion of the Missouri case law on what constitutes a submissible case is found in Knott v. Missouri Boiler & Sheet Iron Works, 299 Mo. 613, 253 S.W. 749, 756. Although that precise question is not our present problem, that opinion throws some light on the subject before us. We note in the Knott case a reference to Huhn v. Missouri Pac. Ry. Co., 92 Mo. 440, 4 S.W. 937, wherein appears the statement—"there is certainly evidence that it [the defendant

railroad] does use them in one", indicating that in the Huhn case evidence was received that the defendant railroad had at least in one instance used the practice which plaintiff contended should have been followed—contrary to the custom the defendant railroad was contending was general and reasonably safe.

 An examination of many of the Missouri cases on the subject leaves us with the conviction that evidence such as that under discussion has not been held to be inadmissible under the circumstances of this case. The defendant was contending that the universal custom was not to put grab-iron steps on bridges like the Topeka bridge. Plaintiff sought to show that there was no substantial dissimilarity between the safety of the two-foot-wide batter posts on the Topeka bridge and the four-foot batter posts on the Sibley bridge, and that defendant had equipped the Sibley bridge with grab-iron steps for safety purposes. Plaintiff offered this evidence in her case in chief. The objection was that there was no similarity between the batter posts on the two bridges, and that such evidence was not proper proof to show that the failure to have grab-irons or steps on the batter post from which deceased fell was negligence. Proof of a custom contrary to that followed is competent evidence on the question of reasonable care. As an isolated instance the evidence offered was not proof of such a custom and if offered for that purpose alone could have been properly excluded. The trial court probably assumed that when offered in chief it was offered for that purpose alone. If such evidence of an isolated instance is offered at a proper time and sufficient similarity of conditions is shown to exist, it is admissible not as proof of a custom but as rebuttal in contradiction of the asserted universal custom to the contrary, and the implication and inference that such a safety device was unheard of on batter posts like those on the Topeka bridge.

 Two witnesses were called by plaintiff to testify that the batter post on the Topeka bridge was not reasonably safe without grab-iron steps. Their qualification as experts in that regard does not appear to have been questioned. The testimony was excluded upon the ground that it was not a proper subject for expert testimony. The question for the jury to decide was whether a two-foot-wide steel batter post with a flange on each side and only rivet heads for footholds, inclined upward at an angle of 53 degrees, was reasonably safe for workmen to climb. Expert testimony is appropriate and proper when the subject is one which a person of normal experience and qualification—a juror—would not be able to decide without the technical assistance of one having unusual knowledge of the subject by reason of skill, experience or education in that particular field. When the subject of inquiry is one which common knowledge would enable one to decide, it is not a proper subject for expert testimony. Redding v. Long-Bell Lumber Co., 8 Cir., 207 F.2d 371. Conversely, it is error to admit expert testimony ordinarily only when it is "without need or any possibility of useful purpose." Hawkins v. Missouri Pac. R. Co., 8 Cir., 188 F.2d 348, 351; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W. 2d 131. The determination of its admissibility is largely within the discretion of the trial court under the peculiar circumstances of each case. The citation of authority, except by way of analogy, is not, therefore, profitable. The trial court obviously concluded that a juror, who presumably had never climbed one, would be as able to decide whether a steel beam, such as this batter post, was reasonably safe for an experienced bridge worker to climb, as a bridge worker witness who regularly climbed them. We would have reached a different conclusion, but the area of discretion on the part of the trial judge is such that the cause would not be reversed for that reason. Cf. Henwood v. Chaney, 8 Cir., 156 F.2d 392.

 The Topeka bridge is not on the main line of defendant's railroad. There were four regular train movements across it a day, and some addition-

al irregular unscheduled movements. Plaintiff offered the testimony of two witnesses to show that a portable adjustable platform on wheels or on a "hiway" railway motor car could have been practicably used and would have furnished reasonably safe working conditions for deceased. This evidence was excluded upon the ground that the witnesses were not shown to be qualified to express an expert opinion on the feasibility or practicability of using this sort of equipment while the bridge was in use for the movement of trains thereon. It appears that one of the witnesses, Joseph J. Feuchter, testified in the case of Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418, on the question of whether from a standpoint of practical engineering the sides of a railroad trestle could be extended or catwalks or guardrails put along its sides without interfering with the operation of the railroad. On appeal it was contended that the trial court abused its discretion in permitting him to testify because he had not been shown to be an expert on railroad bridge construction. The Missouri Supreme Court reviewed his qualifications [we need not repeat them] and held there had been no abuse of discretion. The same witness [1] testified in Carver v. Missouri-Kansas-Texas R. Co., 359 Mo. 709, 245 S.W.2d 96, on the safety of a practice of removing a frame "bent" for the support of a railroad bridge pending its repair. The contention in the Carver case was that the subject was not one calling for expert testimony and not to the witness' qualifications. The Missouri Supreme Court observed, however, that his competency as an expert had been sustained in the Tatum case. The fact that his competency as an expert in related fields had been sustained in other cases did not settle the question of his competency in this. But it appears reasonably certain, from what the Missouri Supreme Court said about his competency as an expert in related fields in the Tatum and Carver cases, that that court would have

held him competent for the purposes of this case. Hence, under the admonition of § 43(a) of the Rules of Civil Procedure, supra, the discretion of the trial court would have been better exercised by admitting his testimony. In important particulars, the qualifications of the other witness, Brooks, appear to be substantially as strong as those of Feuchter. Possibly the comparatively unconvincing nature of testimony that it was practical to use such equipment on a track which was in use for the movement of trains affected the ruling of the trial court. But its weight is not the determining factor in determining its admissibility.

Over the objection of the plaintiff that such testimony was "not a proper test of ordinary care," the trial court admitted the testimony of several witnesses for the defendant, members of the deceased's bridge gang, that they had never known, or had never heard of, a man falling from a batter post before deceased fell. Plaintiff contends the admission of this evidence was error. Defendant challenges the sufficiency of the objection and asserts that the evidence was properly admitted. A similar objection was treated as sufficient to challenge the propriety of the bearing of such evidence on proper care or lack thereof in Friedman v. United Rys. Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074. We will confine the issue on appeal to that question. If the testimony was admissible evidence under the rules of evidence followed by the courts of Missouri or in the courts of the United States, its admission was not error. Rule 43(a), supra. Roth v. Swanson, 8 Cir., 145 F.2d 262. We first consider the Missouri case law on the subject.

Over a long period of time in a number of cases the Missouri courts have consistently condemned the admission of such evidence and have as consistently held its admission to be error. Kirchgraber v. Lloyd, 59 Mo.App. 59; Kelley

[1]. Although his name is there spelled Fuechter, it was obviously the same man. 362 Mo. 897, 245 S.W.2d 96, 103.

v. Parker-Washington Co., 107 Mo.App. 490, 81 S.W. 631; Chase v. Wabash R. Co., 156 Mo.App. 696, 137 S.W. 999; Black v. Metropolitan St. R. Co., 162 Mo. App. 90, 144 S.W. 131; Wright v. Kansas City Terminal R. Co., 195 Mo.App. 480, 193 S.W. 963; Friedman v. United Rys. Co., 293 Mo. 235, 238 S.W. 1074; Walker v. Mitchell Clay Mfg. Co., Mo. App., 291 S.W. 180; Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14; Haverkost v. Sears, Roebuck & Co., Mo. App., 193 S.W.2d 357; Dill v. Dallas County Farmers' Exchange, Mo., 267 S. W.2d 677. The general ground for the exclusion of evidence of this kind is stated by the Missouri Supreme Court in Johnson v. Kansas City Public Service Co., 360 Mo. 429, 228 S.W.2d 796, 797–798, to be that: "Such evidence is held to be inadmissible because it has no reasonable tendency to prove that a place of injury was free from danger and because it raises collateral issues which have a tendency to confuse and mislead the jury." In stating the ground for the rejection of this evidence in Missouri, the Supreme Court said in the Johnson case, 228 S.W.2d loc. cit. 798, that it was rejected because (1) "it would lead to a confusion of issues and (2) that it would possess no force as proof of the facts involved." In the earlier case of Chase v. Wabash R. Co., 156 Mo.App. 696, 137 S.W. 999, 1000, the court gave an additional reason:

"But to allow one accused of maintaining a dangerous structure to exculpate himself by showing that up to the accusation on trial no one had suffered from it would go far towards announcing that one was never liable for the first injury, * * *."

The ground advanced for the admission of this type of evidence is that since evidence of other accidents of like character, caused by the same condition or instrumentality and occurring under substantially the same conditions, is admissible to show the defective and dangerous character of the particular instrumentality or place, that a defendant has the right to introduce converse evidence that no other accidents occurred. Because of the St. Louis Court of Appeals in a carefully considered opinion in Blackwell v. J. J. Newberry Co., 156 S.W.2d 14, indicated considerable doubt as to the correctness of an inflexible rule of exclusion, 156 S.W.2d loc. cit. 20, a number of Missouri authorities which hold that evidence of other accidents is admissible have been examined to determine if, proper foundation being laid therefor, an exception to the general rule of exclusion has been recognized in Missouri.[2] We find no basis for such an exception to the rule of evidence in Missouri. And any doubt created by Blackwell v. J. J. Newberry Co. concerning the inflexibility or universality of the rule of exclusion appears to have been dispelled by the Missouri Supreme Court in Johnson v. Kansas City Public Service Co., supra, where Blackwell v. J. J. Newberry Co. is discussed and the conclusion is reiterated that such evidence would not only lead to confusion of the issues but would possess no force as proof of the facts involved. The argument of practical fairness, mentioned above, was expressly disapproved in Walker v. Mitchell Clay Mfg. Co., Mo.App., 291 S.W. 180, 183, and Johnson v. Kansas City Public Service Co., 360 Mo. 429, 228 S.W.2d 796, 798.

Plaintiff refers us to no federal court cases on the subject and asserts there is

2. Golden v. City of Clinton, 54 Mo.App. 100; Charlton v. St. Louis & S. F. R. Co., 200 Mo. 413, 98 S.W. 529; McGinnis v. R. M. Rigby Printing Co., 122 Mo. App. 227, 99 S.W. 4; Hebenheimer v. City of St. Louis, 269 Mo. 92, 189 S.W. 1180; McCall v. City of Butler, Mo.App., 285 S.W. 1018; Manson v. May Dept. Stores Co., 230 Mo.App. 678, 71 S.W.2d 1081; Metz v. Kansas City, 229 Mo.App. 402, 81 S.W.2d 462; Dewey v. Kline's, 229 Mo.App. 1079, 86 S.W.2d 622; Asbury v. Fidelity National Bank & Trust Co., 231 Mo.App. 437, 100 S.W.2d 946; Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562; Bornhoft v. City of Jefferson, Mo.App., 118 S.W.2d 93.

no rule in the United States courts under which this evidence would be admissible. Defendant relies on Martucci v. Brooklyn Children's Aid Soc., 140 F.2d 732, from the Second Circuit, Denver Park & Amusement Co. v. Pflug, 2 F.2d 961, from this Circuit, and American Agr. Chemical Co. v. O'Donnell Transp. Co., 62 F.Supp. 239, from the District Court of the Southern District of New York, in support of its position that there is an established rule in the United States courts under which the receipt of this evidence is permissible.

The Martucci case holds such evidence to be admissible for the purpose now under consideration. However, it does not purport to announce the rule it applies as its own or as a general rule. It cites as authority two New York State cases, DeSalvo v. Stanley-Mark-Strand Corp., 281 N.Y. 333, 23 N.E.2d 457; Fay v. McNamara, 262 App.Div. 875, 28 N.Y.S.2d 530; and the case of District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618. The DeSalvo case is based entirely upon the case law of New York. The Fay case follows DeSalvo and cites 1 Shearman and Redfield on Negligence, Revised Edition (1941) Sec. 59. This text states that: "The fact that premises or appliances have been used for many years by many persons, without injury, or that no evidence was produced that any other person than the plaintiff had been injured, is a strong circumstance in disproof of negligence in the use of such premises or appliances." As authority for that broad statement the text cites several New York State cases and the case of Prosser v. Montana Central R. Co., 1895, 17 Mont. 372, 43 P. 81, 30 L.R.A. 814. In the Montana case the question was whether plaintiff, a railroad brakeman, was guilty of contributory negligence in boarding a car in a certain manner. The court held that evidence of the usual custom and practice of experienced brakemen in boarding cars in the same manner was proper. District of Columbia v. Arms was a case where evidence of frequent accidents was admitted to show the dangerous condition of a particular place in a street, and knowledge thereof on the part of the defendant, which is not the situation here.

Denver Park & Amusement Co. v. Pflug did not discuss this rule of evidence. It involved the sufficiency of the evidence to support a verdict based on negligence. American Agr. Chemical Co. v. O'Donnell Transp. Co., supra, does not discuss the general rule in federal courts and may have been based entirely on the local rule in New York. We are referred to no case which indicates that a rule of evidence has been applied in the courts of the United States under which such evidence is admissible.

■ A number of states have adopted a rule of evidence under which this evidence is admitted. An annotation of a number of State Court decisions is found in 31 A.L.R.2d 190. Among the states which admit evidence of this nature are Minnesota and Iowa. State rules of evidence do not furnish a basis for the admission of evidence in the United States courts of another state under Rule 43(a).

In the recent case of Chicago, Rock Island & Pacific R. Co. v. Lint, 8 Cir., 217 F.2d 279, 283, this court had before it a Federal Employers' Liability Act case wherein the accident occurred in Iowa and the case was tried in Minnesota. In that case the plaintiff prevailed and on appeal the defendant contended that since the uncontroverted evidence showed that for many years it used the same type of instrumentality and that there had been no previously known accident from its use, its motion for a directed verdict should have been sustained. The court in holding that the weight of this evidence was for the jury said: "Such evidence is admissible and is very persuasive * * *." In McGivern v. Northern Pac. Ry. Co., 8 Cir., 132 F.2d 213, loc. cit. 218, this court restated the general rule that—

"While custom or usage may not be controlling as fixing the standard of care it *may* be accepted (by the court or jury) where the custom or

practice is not in itself negligent or in disregard of the safety of the employee."

It is apparent from the quotation from McGivern v. Northern Pacific that that case did not deal with the precise question now under consideration.

Obviously in Chicago, R. I. & P. R. Co. v. Lint the evidence was admissible because it was clearly admissible under the law of Minnesota where the case was tried. Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N.W.2d 332; Doyle v. St. Paul M. & M. R. Co., 42 Minn. 79, 43 N.W. 787. But should it, by reason of the above quoted language in that opinion be treated as establishing—"a rule of evidence heretofore applied in the courts of the United States on the hearing of suits in equity"—Rule 43(a) supra, with the result that the foundation was thereby established for the admission of such evidence under Rule 43(a) in all of the United States Courts or at least in all of the Federal Courts in this Circuit, regardless of the rule of the State of the forum. The question is by no means free from difficulty.

Passing, without now considering, the question of whether Rule 43(a) intended that new rules of evidence adopted in a United States Court since the enactment of Rule 43(a) should constitute "rules of evidence heretofore applied" in suits in equity, until and unless the Supreme Court speaks to the contrary we reach the conclusion that we should not treat C. R. I. & P. v. Lint as opening the gate to the admission of this evidence in United States Courts in states where it is clearly not admissible, especially since that question was neither involved nor considered in the Lint case.

 We find no justification in the adjudicated cases in the Federal Courts for holding that there is an established rule of evidence in the United States Courts under which this evidence is admissible under Rule 43(a). The rule of evidence of the state in which the case was tried must therefore be applied. Since the evidence was not admissible

under the Missouri rule its admission in this case was error. Its admission was no doubt prejudicial.

The assignment that the court erred in refusing to give plaintiff's requested instruction defining ordinary care requires no serious consideration. The trial court could have with propriety amplified the charge in this particular, but the charge as given was not fatally deficient.

Upon retrial the question raised concerning the propriety of a portion of defendant's argument to the jury is unlikely to arise and need not be considered.

For the reasons stated, the cause is remanded for a new trial.